**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § § § | |
| *Plaintiff,* | § § | CASE NO. _____ |
| v. | § § | |
| **TEXAS A&M UNIVERSITY,** | § § | |
| *Defendant,* | § § | |

**ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Austin Van Overdam (hereinafter "Plaintiff" or "Van Overdam") and files this Original Complaint, complaining of Texas A&M University, and in support thereof would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff Austin Van Overdam is an individual who is a resident of Brazos County, Texas.

2. Defendant Texas A&M University is a general academic teaching institution pursuant to Section 61.003 of the Texas Education Code. Defendant may be served by and through its President, Michael K. Young, at the Office of the President, 1246 TAMU, Texas A&M University, College Station, Texas 77843 or wherever he may be found.

### II.   JURISDICTION

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, specifically claims and causes of action that arise under 20 U.S.C.§ 1681, et seq.

### III.   FACTUAL SUMMARY

4.   Beginning in September 2015, Austin Van Overdam was a student at Texas A&M University and a swimmer on the Texas A&M University Swim Team. In September 2015, Van Overdam connected with a female user on Tinder. Tinder is a social media application that allows users to connect with one another if they find each other attractive. With its emphasis on attractiveness, Tinder has fueled the "hookup culture," allowing users to meet almost immediately for a sexual encounter.

5.   Van Overdam's Tinder connection in September 2015 was with Hannah Shaw, a fellow student at Texas A&M University. After only a few private messages through the Tinder app, Shaw came over to Van Overdam's residence with the plan being to engage in sexual activity.

6.   Upon arriving, Van Overdam and Shaw engaged in vaginal intercourse followed immediately by anal intercourse. After the anal intercourse, Shaw next immediately performed oral sex on Van Overdam until he reached ejaculation. At no time did Shaw protest or voice any concerns regarding any actions that Van Overdam and/or Shaw engaged in. Especially revelaing was Shaw's voluntary third sexual act of performing oral sex on Van Overdam.

7.   Following the intercourse and oral sex, Shaw asked that Van Overdam let her stay to cuddle but Van Overdam declined. Shaw was visibly upset that Van Overdam did not want to let her stay. As Shaw went to leave Van Overdam's residence, she asked for a "goodbye kiss," and Van Overdam again declined. Once again, Shaw was visibly upset; however, she did leave Van Overdam's residence. This was the only encounter or interaction that Van Overdam and Shaw had.

8.   Eight months later, Van Overdam was informed by Texas A&M University that he was under investigation for two charges of sexual abuse (for anal intercourse without consent and oral sex without consent), one charge of sexual contact (for ejaculating in Shaw's mouth without

consent), and a charge of dating violence (for grabbing Shaw's wrists during intercourse). The Texas A&M University Student Conduct Office conducted an initial investigation and charged Van Overdam with the four charges.

9. At the conduct hearing conducted by the Texas A&M University Student Conduct Office, testimony was heard from both Van Overdam and Shaw. There was **no other testimony** and no other evidence presented. The Texas A&M administrative hearing panel heard just the contradicting "swearing match" testimony of Van Overdam (who claimed there was consent at each stage of all three sexual encounters) and Shaw (who testified that she had not consented to the anal intercourse **but had consented to vaginal intercourse and oral sex**). Despite this clearly contradicting testimony, the Texas A&M administrative hearing panel found Van Overdam responsible for one charge of sexual abuse (for anal intercourse without consent) but not responsible for any of the other charges. Van Overdam appealed the finding of responsibility but it was upheld on the appeal.

10. More than two years later, Texas A&M University continues to ignore the clearly contradictory testimony and continues to support the narrative. Publicly, Texas A&M University is supporting Shaw as a purported "victim," buckling under public pressure and hiding behind its discriminatory policies and procedures.

## IV. CAUSES OF ACTION

### 1) *Title IX, 20 U.S.C. § 1681, et seq.* – Disparate Treatment Based on Sex

11. Plaintiff repeats and re-alleges paragraphs 5–10 as if fully set forth herein.

12. Title IX prohibits discrimination in educational institutions on the basis of sex if any part of such an educational institution receives federal funds of any kind. Texas A&M University receives federal funding in the form of, *inter alia*, student loans and other monetary grants given to students and faculty members.

13. Both the United States Department of Education and the United States Department of Justice have promulgated regulations under Title IX that require an educational institution to put in place grievance procedures providing for the adjudication of sexual misconduct claims by students. *See* 28 C.F.R. § 54.135(b); 34 C.F.R. § 106.8(b). These procedures must afford due process to the parties involved and, at a minimum, provide "adequate, reliable, and ***impartial*** investigation of complaints." *See generally* U.S. Dep't of Ed., Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX* (2001) (emphasis added).

14. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, Texas A&M University creates an environment in which male students accused of sexual misconduct are nearly assured of a finding of responsibility. This denies the accused his fundamental due process rights and deprives these male students of educational opportunities solely on the basis of their sex.

15. More specifically with regard to the matter at bar, Van Overdam is a male student at Texas A&M University accused of sexual misconduct. He was subject to these aforementioned discriminatory practices as a result of the Texas A&M University sexual misconduct disciplinary process. As described more fully *infra*, Van Overdam was stigmatized as a result of his gender while Shaw was viewed as a "victim" even before any adjudication of the sexual misconduct allegations against Van Overdam took place. Furthermore, Van Overdam's testimony was totally discounted while Shaw's contradictory testimony was deemed more reliable without reason or explanation. Even considering Shaw's third voluntary sex act with Van Overdam, giving him oral sex, and how it was juxtaposed against what she purported was resistance to the second sex act of anal intercourse, the Texas A&M administrative hearing panel inexplicably found Van Overdam responsible. This discrimination was based ***solely*** on Van Overdam's gender in violation of Title

IX.

16. As a direct and proximate result of Texas A&M University's unlawful sex discrimination against Van Overdam, he has and will continue to suffer harm, injury, and damages. Such harm, injury, and damages include, but are not limited to, denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including his standing in his community, loss of career opportunities and future earning capacity, humiliation and embarrassment, and mental and emotional distress.

17. Accordingly, Texas A&M University is liable to Van Overdam for discrimination against him solely on the basis of his sex in direct contravention of Title IX.  Texas A&M University is therefore liable to Van Overdam for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

2) *Title IX, 20 U.S.C. § 1681,* **et seq. – Disparate Impact Based on Sex**

18. Plaintiff repeats and re-alleges paragraphs 5–10 as if fully set forth herein.

19. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, Texas A&M University creates an environment in which the accused is nearly assured of a finding of responsibility. Upon information and belief, the accused is a male in virtually all cases of allegations of sexual misconduct at Texas A&M University. Therefore, Texas A&M University's sexual misconduct disciplinary process has a disparate impact on male students.

20. Texas A&M University has not provided a legally sufficient rationale for creating and applying different standards for the accused and the accuser in a sexual misconduct matter. Furthermore, there is no legitimate basis for these different standards.  This disparate standard denies the accused his fundamental due process rights and deprives these male students of educational opportunities solely on the basis of their sex.

21. More specifically with regard to the matter at bar, Van Overdam is a male student at Texas A&M University accused of sexual misconduct. He was subject to these aforementioned discriminatory practices as a result of the Texas A&M University sexual misconduct disciplinary process. As described more fully *infra*, Van Overdam was stigmatized as a result of being accused of sexual misconduct while Shaw was viewed as a "victim" even before any adjudication of the sexual misconduct allegations against Van Overdam took place. Furthermore, Van Overdam's testimony as the accused was discounted while Shaw's testimony as accuser was deemed more reliable without reason or explanation. Even considering Shaw's third voluntary sex act with Van Overdam, giving him oral sex, and how it was juxtaposed against what she purported was resistance to the second sex act of anal intercourse, the Texas A&M administrative hearing panel inexplicably found Van Overdam responsible. Male students bear the brunt of this disparate impact because males are disparately accused of sexual misconduct at Texas A&M University.

22. As a direct and proximate result of Texas A&M University's unlawful sex discrimination against Van Overdam, he has and will continue to suffer harm, injury, and damages. Such harm, injury, and damages include, but are not limited to, denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including to his standing in his community, loss of career opportunities and future earning capacity, humiliation and embarrassment, and mental and emotional distress.

23. Accordingly, Texas A&M University is liable to Van Overdam for discrimination against him solely on the basis of his sex in direct contravention of Title IX. Texas A&M University is therefore liable to Van Overdam for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

## V.     JURY DEMAND

24. Van Overdam demands a trial by jury on all triable issues.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Austin Van Overdam asks that the Court issue citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant compensatory damages, punitive damages, attorneys' fees, and such further relief, both general and special, at law or in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By: /s/ Gaines West
    GAINES WEST
    State Bar No. 21197500 / SDTX No. 5327
    Email: gaines.west@westwebblaw.com
    JOHN "JAY" RUDINGER, JR.
    State Bar No. 24067852 / SDTX No. 1421393
    Email: jay.rudinger@westwebblaw.com
    AARON B. MICHELSOHN
    State Bar No. 24085473 / SDTX No. 3137356
    Email: aaron.michelsohn@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**