UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUSTIN VAN OVERDAM, § § *Plaintiff*, § § v. § § TEXAS A&M UNIVERSITY, § § *Defendant*, § | CASE NO. 4:18–CV–02011 |

**FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Austin Van Overdam (hereinafter "Plaintiff" or "Van Overdam") and files this Original Complaint, complaining of Texas A&M University, and in support thereof would respectfully show the Court as follows:

## I. PARTIES

1. Plaintiff Austin Van Overdam is an individual who is a resident of Brazos County, Texas.

2. Defendant Texas A&M University is a general academic teaching institution pursuant to Section 61.003 of the Texas Education Code. Defendant has already made an appearance in this matter.

## II. JURISDICTION

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, specifically claims and causes of action that arise under 20 U.S.C.§ 1681, et seq.

### III. FACTUAL SUMMARY

4. Beginning in September 2015, Austin Van Overdam was a student at Texas A&M University and a swimmer on the Texas A&M University Swim Team. In September 2015, Van Overdam connected with a female user on Tinder. Tinder is a social media application that allows users to connect with one another if they find each other attractive. With its emphasis on attractiveness, Tinder has fueled the "hookup culture," allowing users to meet almost immediately for a sexual encounter.

5. Van Overdam's Tinder connection in September 2015 was with Hannah Shaw, a fellow student at Texas A&M University. After only a few private messages through the Tinder app, Shaw took an Uber over to Van Overdam's on-campus apartment with the plan being to engage in sexual activity.

6. Upon arriving, Van Overdam and Shaw engaged in vaginal intercourse followed immediately by anal intercourse. After the anal intercourse, Shaw next immediately performed oral sex on Van Overdam until he reached ejaculation. At no time did Shaw protest or voice any concerns regarding any actions in which Van Overdam and/or Shaw engaged. Especially revealing was Shaw's voluntary third sexual act of performing oral sex to the point of ejaculation on Van Overdam. Shaw inexplicably was found by the Texas A&M University administrative hearing panel to have consented to the oral sex she performed on Van Overdam *immediately* following allegedly unwanted anal intercourse

7. Following the intercourse and oral sex, Shaw asked that Van Overdam let her stay to cuddle but Van Overdam declined. Shaw was visibly upset that Van Overdam did not want to let her stay. As Shaw went to leave Van Overdam's apartment, she asked for a "goodbye kiss," and Van Overdam again declined. Once again, Shaw was visibly upset; however, she did then leave Van Overdam's apartment. This was the only meeting, encounter, or interaction that Van

Overdam and Shaw ever had.

8. To summarize, the sexual acts between Shaw and Van Overdam occurred in the following chronological sequence: Act 1 – vaginal intercourse; Act 2 – anal intercourse; Act 3 – oral sex to the point of ejaculation. And in an Act 4, Shaw sought to cuddle, spend the night, and obtain a goodnight kiss, all from Van Overdam.

9. Eight months later, Van Overdam was informed by Texas A&M University that he was under investigation for two charges of sexual abuse (for anal intercourse without consent and oral sex without consent), one charge of sexual contact (for ejaculating in Shaw's mouth without consent), and a charge of dating violence (for grabbing Shaw's wrists during anal intercourse). The Texas A&M University Student Conduct Office conducted an initial investigation and charged Van Overdam with the four charges.

10. At the conduct hearing conducted by the Texas A&M University Student Conduct Office, testimony was heard from both Van Overdam and Shaw. Texas A&M employees at the disciplinary hearing unilaterally excluded evidence of Shaw's current mental health and her past mental history. This unilateral exclusion over Van Overdam's objection of relevant evidence that would have impacted the Texas A&M administrative hearing panel's evaluation of Shaw's credibility was an egregious denial of Van Overdam's due process rights. Left with only the contradictory "swearing match" testimony of Van Overdam (who claimed there was consent at each stage for Acts 1, 2, and 3—all sexual encounters) and Shaw (who testified that she had *only* not consented to the anal intercourse *but had consented to vaginal intercourse and oral sex*), the exclusion of relevant evidence to explain context, motive, and evaluative processes hampered the Texas A&M administrative hearing panel's ability to properly evaluate credibility. Despite the fact that no reasonable factfinder could conclude that a victim of nonconsensual anal intercourse could immediately, after this alleged assault occurred (anal intercourse), then voluntarily perform

a subsequent sexual act of oral sex to the point of ejaculation on the alleged assailant, the Texas A&M administrative hearing panel found Van Overdam responsible for one charge of sexual abuse (for anal intercourse without consent) **but not responsible for any of the other charges**. Van Overdam appealed the finding of responsibility, but it was upheld on the appeal.

11. None of Texas A&M University's administrative employees have ever explained the obvious discrepancy in the findings reached by the hearing panel for the conclusion that Van Overdam was not responsible for misconduct in a sexual act (oral sex to the point of ejaculation, Act 3) that immediately followed a sexual act (anal intercourse, Act 2) in which there was a finding of responsibility. A reasonable factfinder could have decided Shaw was more credible and concluded that Van Overdam was responsible for both acts, which would have been consistent with Shaw's claim that she only participated in oral sex because she was afraid.[1] Or a reasonable factfinder could have concluded that Van Overdam was not responsible for misconduct in any of the sexual acts. The panel instead reached contradictory findings, which are explained by gender bias.[2]

12. The Texas A&M University administrative hearing panel reached these contradictory conclusions in the context of continuous pressure from both the public, and the federal government, to find males similarly situated to Van Overdam responsible for alleged acts of sexual violence.[3] For example, in 2015, the Washington Post reported, at Texas A&M University, "Fifteen percent of undergraduate women [who responded to a survey] said they were victims of non-consensual sexual contact through force or in situations when they were

---

[1] Naomi Martin, *Sexual assault survivors say Texas A&M chose its brand over justice*, DALLASNEWS (June 29, 2018), https://www.dallasnews.com/news/texas/2018/06/29/sexual-assault-survivors-say-texas-am-chose-brand-justice ("To appease him, she performed oral sex on him, she said, because 'I could tell that was what he wanted from his body language . . . .'").
[2] This gender bias has always been prevalent in Texas A&M's administrative hearings, evidenced by conduct of the members, including asking an accused male student if "he is even worthy of wearing an Aggie ring." Affidavit of Cameron Reynolds, ¶ 4, attached hereto as Exhibit 1.
[3] Dear Colleague Letter dated April 4, 2011, issued by the Office of the Assistant Secretary, Department of Education, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html (last visited Nov. 12, 2018)

incapacitated and unable to consent."[4]  "Seven percent of undergraduate women said they suffered incidents involving non-consensual sexual penetration or attempted penetration."[5] And "[f]ive percent of students said sexual assault is very or extremely problematic at the school."[6]  And in 2015, the U.S. Department of Education Office for Civil Rights investigated Texas A&M University for similar violations that administrators went too far in suspending a male student, but university officials publicly balked at the investigation, stating that "I don't think this has been the government's finest hour."[7]

13.     The constant scrutiny from the public and the federal government helps explain the university's motivation to create a system that commonly results in finding Texas A&M University's male students responsible for sexual misconduct complaints.  Texas A&M University's resistance to past federal investigations into their practices involving other instances of bias against male students demonstrably shows that the problem still persists at Texas A&M University, and that the pressure from the federal government also explains why a hearing panel would produce contradictory findings in their attempt to arrive at a finding of responsibility for the male student, but with a feigned appearance of objectivity.

14.     More than two years later, Texas A&M University continues to ignore the contradictory testimony of Van Overdam and Shaw, and continues to support the narrative that finds the woman's allegations, here Shaw, more credible.  Publicly, Texas A&M University is still supporting Shaw as a purported "victim," buckling under public pressure and trying to hide behind its own discriminatory policies and procedures.

---

[4] Nick Anderson & Susan Svrluga, *What a massive sexual assault survey found at 27 top U.S. universities*, WASH. POST (Sept. 21, 2015), https://www.washingtonpost.com/news/grade-point/wp/2015/09/21/what-a-massive-sexual-assault-survey-showed-about-27-top-u-s-universities/?noredirect=on&utm_term=.f6b19720984c.
[5] *Id.*
[6] *Id.*
[7] Matthew Watkins, *Sexual Assault Investigation Forces A&M to Walk a Fine Line*, TEX. TRIBUNE (Nov. 15, 2015, 6:00 AM), https://www.texastribune.org/2015/11/18/federal-sexual-violence-investigation-m-shows-deli/.

## IV. CAUSES OF ACTION

**1)** *Title IX, 20 U.S.C. § 1681, et seq. – Erroneous Outcome and Disparate Treatment Based on Sex*

15. Plaintiff repeats and re-alleges paragraphs 4–14 as if fully set forth herein.

16. Title IX prohibits discrimination in educational institutions on the basis of sex if any part of such an educational institution receives federal funds of any kind. Texas A&M University receives federal funding in the form of, *inter alia*, student loans and other monetary grants given to students and faculty members.

17. Both the United States Department of Education and the United States Department of Justice have promulgated regulations under Title IX that require an educational institution to put in place grievance procedures providing for the adjudication of sexual misconduct claims by students. *See* 28 C.F.R. § 54.135(b); 34 C.F.R. § 106.8(b). These procedures must afford due process to the parties involved and, at a minimum, provide "adequate, reliable, and ***impartial*** investigation of complaints." *See generally* U.S. Dep't of Ed., Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX* (2001) (emphasis added).

18. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, Texas A&M University creates an environment in which male students accused of sexual misconduct are assured of a finding of responsibility. Texas A&M University regularly applies different standards to male accused students in the investigation and enforcement of sexual misconduct allegations, and the process usually, and systematically, results in findings of responsibility for male students, regardless of the evidence.[8] This denies the accused, here Van Overdam, of his fundamental due process rights and deprives these male students

---

[8] *See* Exhibit 1; Affidavit of Hutton Ask, attached hereto as Exhibit 2. Furthermore, discovery will likely provide additional support for this claim, as Texas A&M University is in possession of statistical information and more specific information about past investigations and disciplinary results.

(similarly situated to Van Overdam) of educational opportunities solely on the basis of their gender.

19. During the time period relevant to this investigation and the disciplinary sanctions against Van Overdam, Texas A&M University was under pressure from both the public and the federal government.[9] Texas A&M University has a general interest in protecting its reputation, and the university has a financial interest in producing findings of responsibility for the federal government. As a result of these pressures and incentives, Texas A&M University administers investigations into sexual misconduct in a manner that disfavors male accused students.

20. When males are found responsible for sexual misconduct, like Van Overdam, they receive discipline such as suspension or expulsion. But female students have been found responsible for sexual misconduct and allowed to remain in school.[10] Accordingly, the difference in treatment between female students who are found responsible for some acts of sexual misconduct, and the treatment of Van Overdam, shows that the outcome reached by the Texas A&M University administrative hearing panel resulted from gender bias.

21. More specifically with regard to the matter at bar, Van Overdam is a male student at Texas A&M University accused of sexual misconduct. He was the subject of these aforementioned discriminatory practices as a result of the Texas A&M University sexual misconduct disciplinary process. As described more fully *infra*, Van Overdam was stigmatized as a result of his gender while Shaw was viewed as a "victim" even before any adjudication of the sexual misconduct allegations against Van Overdam took place. Texas A&M University employees told Shaw not to get an attorney because they would handle her case, which indicates that Texas A&M University supported Shaw from the beginning because she was a female student

---

[9] *See supra* notes 3–7 and accompanying text.
[10] Rusty Surette, *Former student files Title IX lawsuit against Texas A&M*, KBTX (Aug. 15, 2017, 5:21 PM), https://www.kbtx.com/content/news/Former-student-files-Title-IX-lawsuit-against-AM-following-sexual-misconduct-case-440614983.html (last updated Aug. 15, 2017, 10:52 PM).

making sexual misconduct allegations. In addition, by telling Shaw she did not need to get an attorney, Texas A&M University implied to Shaw that she would receive a favorable outcome in the investigation and hearing before the process even began. Moreover, during the hearing, Texas A&M University excluded Van Overdam's offer of exculpatory evidence of Shaw's mental health. By preventing Van Overdam from presenting exculpatory evidence like this, Texas A&M University employees ensured that the male accused student would face a "he said, she said" swearing match with nothing more than the protestations of one another. Limiting the evidence in the manner that it did, the Texas A&M University administrative hearing panel completely discounted Van Overdam's testimony and deemed Shaw's contradictory testimony more reliable all without reason or explanation. Even considering Shaw's voluntary decision to complete Act 3 (oral sex on Van Overdam to the point of ejaculation), and how it was juxtaposed against Act 2 (anal intercourse), which she purported was nonconsensual, the Texas A&M University administrative hearing panel inexplicably found Van Overdam responsible. This disparate treatment between Van Overdam and Shaw was based *solely* on Van Overdam's gender in violation of Title IX, and resulted in an erroneous outcome in the Texas A&M University disciplinary hearing.

22. Texas A&M University cannot explain its disparate treatment between male and female students in the disciplinary process by claiming that it simply favors all victims. Texas A&M University publicly states that it strives for fairness in its process for accused students.[11] Therefore, any explanation that depends on favoritism of victims would be a pretextual attempt to cover the true gender bias at the heart of its treatment of Van Overdam and other male students.

23. As a direct and proximate result of Texas A&M University's unlawful gender

---

[11] TEXAS A&M TODAY, *Texas A&M Releases Reports On Title IX Policy And Procedures*, (Aug. 20, 2018), https://today.tamu.edu/2018/08/20/texas-am-releases-reports-on-title-ix-policy-and-procedures/ (Texas A&M Provost and Executive Vice President Carol A. Fierke said, "I feel confident that these changes will make our Title IX processes more sensitive, transparent and fair for our students.").

discrimination against Van Overdam, he has suffered harm and he will continue to suffer harm, injury, and damages. Such harm, injury, and damages include, but are not limited to, the denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including his standing in his community, loss of career opportunities and future earning capacity, humiliation and embarrassment, and mental and emotional distress.

24. Accordingly, Texas A&M University is liable to Van Overdam for discrimination against him solely on the basis of his gender in direct contravention of Title IX. Texas A&M University is therefore liable to Van Overdam for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

**2)** *Title IX, 20 U.S.C. § 1681,* **et seq. – Selective Enforcement**

25. Plaintiff repeats and re-alleges paragraphs 4–14 as if fully set forth herein.

26. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct in Van Overdam's case, Texas A&M University selectively pursued the investigation and enforced sanctions against Van Overdam based on gender. For instance, another Texas A&M University administrative hearing panel found a female student responsible for some of the allegations in a complaint against her, but that female student received no sanctions.[12] But because Van Overdam is male, Texas A&M University vigorously adjudicated the allegations against him and suspended him from school, despite the administrative hearing panel's own contradictory findings regarding his conduct. Because Texas A&M University treats males and females differently when investigating and enforcing sanctions for allegations and findings of responsibility for sexual misconduct, Texas A&M is liable for selective enforcement under Title IX.

---

[12] *See* Rusty Surette, *supra* note 10.

27. Additionally, Van Overdam is a male student at Texas A&M University accused of sexual misconduct. He was subject to these aforementioned discriminatory practices by Texas A&M University as a result of the application of the Texas A&M University sexual misconduct disciplinary process to him. As described more fully *infra*, Van Overdam was stigmatized as a result of being accused of sexual misconduct while Shaw was viewed as a "victim" even before any adjudication of the sexual misconduct allegations against Van Overdam took place. Furthermore, Van Overdam's testimony as the accused was discounted while Shaw's testimony as accuser was deemed more reliable without reason or explanation. Even considering Shaw's voluntary decision to complete Act 3 (oral sex to the point of ejaculation) with Van Overdam and how it was juxtaposed against Act 2 (anal intercourse), which she purported was nonconsensual, the Texas A&M University administrative hearing panel inexplicably found Van Overdam responsible. This selective enforcement is not limited to Van Overdam's case. Texas A&M regularly applies different standards to male accused students in the investigation and enforcement of sexual misconduct allegations.[13] In addition to selective enforcement of university standards varying between male and female accused students, the difference in treatment between Van Overdam and Shaw also constitutes selective enforcement.

28. Texas A&M University has not provided a legally sufficient rationale for creating and applying different standards for accused males in a sexual misconduct matter. Furthermore, there is no legitimate basis for these different standards. This disparate standard denied Van Overdam his fundamental due process rights and deprived him of educational opportunities solely on the basis of his gender.

29. As a direct and proximate result of Texas A&M University's unlawful sex discrimination against Van Overdam, he has and will continue to suffer harm, injury, and damages.

---

[13] *See* Exhibit 1; Exhibit 2.

Such harm, injury, and damages include, but are not limited to, denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including to his standing in his community, loss of career opportunities and future earning capacity, humiliation and embarrassment, and mental and emotional distress.

30. Accordingly, Texas A&M University is liable to Van Overdam for discrimination against him solely on the basis of his sex in direct contravention of Title IX. Texas A&M University is therefore liable to Van Overdam for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

*3)* **U.S. Constitution Amendments V and XIV; Texas Constitution Article I, Section 19 – Due Process Violation**

31. Plaintiff repeats and re-alleges paragraphs 4–14 as if fully set forth herein.

32. Texas A&M University violated Van Overdam's right to be free from the deprivation of liberty and property interests without due process of law under the United States Constitution and the Texas Constitution when Texas A&M University employees unilaterally excluded evidence of Shaw's current and past mental health history and prevented Van Overdam from undertaking any meaningful cross-examination by an attorney.

33. The exclusion of relevant evidence that would have impacted the Texas A&M University administrative hearing panel's evaluation of Shaw's credibility was an egregious denial of Van Overdam's due process rights. Left with only the contradictory statements of the only two actual witnesses to Acts 1, 2, 3, and 4, the exclusion of relevant evidence to explain context, motive, and evaluative processes hampered the hearing panel's ability to properly evaluate credibility through a fair process. Additionally, the exclusion of evidence was not cured, but instead was repeated, during the appeal.

34. By denying this due process and limiting Van Overdam's ability to defend himself, Texas A&M University subjected Van Overdam's reputation to severe stigmatization that will

harm Van Overdam's future educational and employment opportunities. Indeed, Van Overdam's accuser, Shaw, has since published a widely-shared statement on Twitter: "Me: I'm unhappy the boy who r*ped me is back on the swim team" in juxtaposition to a tone-deaf response she received from Texas A&M University employees about Van Overdam after he completed his suspension.[14] After being widely shared on Twitter, Shaw's statement has recirculated in prominent publications.[15] Therefore, as a result of the denial of due process, Van Overdam has, and will continue to, suffer severe reputational harm from the stigma arising from Texas A&M University's disciplinary hearing, which will hamper his ability to fully participate in educational and employment activities.

35. By denying due process and limiting Van Overdam's ability to defend himself, Texas A&M University deprived Van Overdam of his liberty interests in pursuing knowledge, in pursuing his education, and in maintaining his status as a student in good standing during the time of his suspension.

36. By denying due process and limiting Van Overdam's ability to defend himself, Texas A&M University deprived Van Overdam of his property interests in maintaining his status as a student in good standing and in continuing to take courses at Texas A&M University during the time of his suspension.

37. Defendants are a publicly funded institution of higher education of the State of Texas and were acting under color of state law when they deprived Van Overdam of his due process rights, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 19, of the Texas Constitution.

---

[14] Dan Solomon & Jessica Luther, *Meet the Women Whose Persistence Made Texas A&M Change Its Sexual Assault Policies*, TEX. MONTHLY (Nov. 6, 2018), https://www.texasmonthly.com/news/meet-women-whose-persistence-made-texas-change-sexual-assault-policies/?fbclid=IwAR0qvdHtQisphRswvpk95_YE1kJrEqlSNGW7tQopuUagfQor9UAvQxEm8xI.
[15] *E.g.*, *id.*

## V. JURY DEMAND

38. Van Overdam demands a trial by jury on all triable issues.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Austin Van Overdam asks that the Court issue citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant compensatory damages, punitive damages, attorneys' fees, and such further relief, both general and special, at law or in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By: /s/ Gaines West
GAINES WEST
State Bar No. 21197500 / SDTX No. 5327
Email: gaines.west@westwebblaw.com
JOHN "JAY" RUDINGER, JR.
State Bar No. 24067852 / SDTX No. 1421393
Email: jay.rudinger@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document in accordance with the protocols for efiling through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on November 12, 2018, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

By: /s/ Gaines West
GAINES WEST

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUSTIN VAN OVERDAM, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 4:18-CV-02011 |
| TEXAS A&M UNIVERSITY, | § § § | |
| *Defendant,* | § § | |

### AFFIDAVIT OF CAMERON REYNOLDS

§
§
§

BEFORE ME, the undersigned authority, on this day personally appeared, who is personally known to me and who, after first being duly sworn according to law on his oath, deposed and said:

1. My name is Cameron Reynolds. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am competent to testify to the matters stated herein. I am personally acquainted with the facts stated herein and affirm the following is true and correct.

2. I am a licensed attorney in Texas and have been practicing since 1994. Since 1999, part of my practice involves representing students accused of violations from the Texas A&M University Student Conduct Office. I have represented more than 100 male students in these matters, including more than 10 cases involving allegations of sexual assault.

3. In almost all the cases I have handled, the process utilized by Texas A&M University resulted in the male student being found responsible for the conduct of which he was accused.

4. In many of the cases, university employees have excluded evidence presented by male students while generally allowing female students more latitude in

PAGE 1

presentation of evidence. I have actually had a female panel member ask a male student if he was even worthy of wearing an Aggie ring during a hearing.

5. Based on my experience in these cases, the university seems to follow a pattern of investigating and punishing male students regardless of the evidence presented, but the university does not similarly pursue investigations and enforce discipline against female students.

Cameron Reynolds

SUBSCRIBED AND SWORN TO BEFORE ME on this 12TH day of November, 2018, to certify which witness my hand and official seal of office.

Notary Public for the State of Texas

KERRI KUBALA
Notary ID #126885619
My Commission Expires
May 12, 2021

# **EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **AUSTIN VAN OVERDAM,** § § *Plaintiff,* § § **v.** § § **TEXAS A&M UNIVERSITY,** § § *Defendant,* § § § | CASE NO. 4:18-CV-02011 |

### AFFIDAVIT OF HUTTON ASK

STATE OF TEXAS § §
COUNTY OF BRAZOS §

BEFORE ME, the undersigned authority, on this day personally appeared, who is personally known to me and who, after first being duly sworn according to law on his oath, deposed and said:

1. My name is Hutton Ask. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am competent to testify to the matters stated herein. I am personally acquainted with the facts stated herein and affirm the following is true and correct.

2. I am a licensed attorney in Texas and have been practicing since 2013. Since 2016, part of my practice involves representing students accused of violations from the Texas A&M University Student Conduct Office. I have represented 6 male students in these matters, including 3 cases involving allegations of sexual assault.

3. In all the cases I have handled, the process utilized by Texas A&M University resulted in the male student being found responsible for the conduct of which he was accused.

4. In many of the cases, university employees have excluded evidence presented by male students while generally allowing female students more latitude in presentation of evidence.

5. Based on my experience in these cases, the university seems to follow a pattern of investigating and punishing male students regardless of the evidence presented, but the university does not similarly pursue investigations and enforce discipline against female students.

Further, affiant sayeth not.

_____
Hutton Ask

SUBSCRIBED AND SWORN TO BEFORE ME on this 9th day of November, 2018, to certify which witness my hand and official seal of office.

_____
Notary Public for the State of Texas

MARIA A. NAFF
Notary Public, State of Texas
Comm. Expires 02-13-2022
Notary ID 131448325