## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | **CASE NO. 4:18-CV-02011** |
| **TEXAS A&M UNIVERSITY,** | § § § | |
| *Defendant,* | § § | |

### PLAINTIFF AUSTIN VAN OVERDAM'S MOTION FOR RECONSIDERATION

COMES NOW Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and respectfully asks this Court to reconsider its ruling on Defendant Texas A&M University's Motion to Dismiss Plaintiff's Second Amended Complaint and the scope of discovery relevant to Plaintiff's Title IX claim, as articulated in the Court's oral ruling during the November 5, 2019 hearing, the transcription of which is attached to this motion as Exhibit A.

### I.   INTRODUCTION

The Court should reconsider its ruling on Defendants' Motion to Dismiss concerning both Plaintiff's Title IX claim under the erroneous outcome theory and Plaintiff's due process claim in light of two significant developments. First, having gained traction among the circuit courts of appeals, the so-called *Purdue* standard articulated by Judge Amy Coney Barrett has been recognized as a simpler method of analyzing a Title IX claim in accordance with the statutory text of Title IX. Under the statute, the appropriate test is simply: "[D]o the alleged facts, if true, raise a plausible inference that the university discriminated against [the plaintiff student] 'on the basis of sex'?" *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019). Based on that straightforward test, not only should Plaintiff's Title IX claim proceed, but also Plaintiff should be

allowed to obtain any discovery from Defendant relevant to discrimination on the basis of sex, regardless of whether any such discovery would overlap with one or more doctrinal theories of Title IX liability.

Second, the Texas Attorney General has made a 180-degree shift on its position about the requirements of the Constitution underlying the due process protections included in the Department of Education's Title IX final rule ("Final Rule"),[1] which now "carries the full force of law"[2] and which has survived injunction bids by several states.[3] In opposing those injunction bids, the Texas Attorney General penned an amicus brief and agreed with Plaintiff's position on the fundamental requirements of due process in this case, particularly as it relates to attorney cross-examination.[4] The Texas Attorney General agreed that "the Final Rule merely adopts many due process protections ***already required by the Constitution***."[5] Moreover, the Texas Attorney General unequivocally now disavows any burdens associated with the Final Rule, which includes adversarial cross-examination by an attorney.[6] This position change effectively concedes that the due process analysis of the *Mathews* factors[7] favors Plaintiff in this case.

---

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) (to be codified 34 C.F.R. pt. 106) (effective as of August 14, 2020), available at https://www.govinfo.gov/content/pkg/FR-2020-05-19/pdf/2020-10512.pdf.

[2] Press Release, U.S. Department of Education Launches New Title IX Resources for Students, Institutions as Historic New Rule Takes Effect, U.S. Dep't of Educ. (Aug. 14, 2020), https://www.ed.gov/news/press-releases/us-department-education-launches-new-title-ix-resources-students-institutions-historic-new-rule-takes-effect#:~:text=Background%20on%20the%20Title%20IX%20Rule%3A&text=The%20regulation%20carries%20the%20full,subjecting%20survivors%20to%20further%20trauma.

[3] *E.g., Pennsylvania v. DeVos*, 1:20-CV-01468 (CJN), 2020 WL 4673413, at *14 (D.D.C. Aug. 12, 2020) (denying preliminary injunction based on state's failure to show, among other things, a likelihood of success on the merits); *New York v. United States Dep't of Educ.*, 20-CV-4260 (JGK), 2020 WL 4581595, at *15 (S.D.N.Y. Aug. 9, 2020) (same).

[4] <u>Exhibit B</u>: BRIEF OF THE STATES OF TEXAS, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, KENTUCKY, LOUISIANA, MISSISSIPPI, NEBRASKA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, AND TENNESSEE, AS AMICI CURIAE IN SUPPORT OF DEFENDANTS, (hereinafter "Brief of the State of Texas") Cause No. 1:20-cv-01468-CJN, Doc. 79 (filed Jul. 16, 2020), available at http://2hsvz0l74ah31vgcm16peuy12tz.wpengine.netdna-cdn.com/wp-content/uploads/2020/07/02327967.pdf.

[5] Brief of the State of Texas, Doc. 79 at 16 (emphasis added).

[6] Brief of the State of Texas, Doc. 79 at 15, 16–17, 19–20.

[7] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As the law has continued to develop during the course of this litigation, it has become clear that Defendant cannot shield itself from discovery and evidence relevant to the statutory crux of Plaintiff's claim—that sex bias motivated Defendant to discriminate against Plaintiff because he is male. Now, even the Texas Attorney General—Defendant's lawyer—recognizes these developments and has aligned with Doe's position on the substance of the constitutional analysis required by the Due Process Clause. As a result, the Court should reconsider its ruling and allow Plaintiff to proceed with his Title IX claim with full discovery into any matter relevant to Defendant's sex bias against Plaintiff, regardless of any overlap between a selective enforcement and an erroneous outcome claim. Additionally, the Court should reconsider its ruling and allow Plaintiff's due process claim to proceed as required under the *Mathews* analysis—balancing the relative benefit of attorney cross-examination to prevent the erroneous deprivation of Plaintiff's compelling liberty interest against the relative burden on Defendant (none) in allowing attorney cross-examination—which clearly favors Plaintiff in light of the Texas Attorney General's concession.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard Applicable to Motion to Reconsider

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Court has discretion to reconsider the Order "for any reason it deems sufficient." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal quotations and citation omitted). Thus, as the Fifth Circuit has emphasized, "under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Cabral v. Brennan*,

853 F.3d 763, 766 n.3 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

The Court has the discretion to reconsider its decision and should do so, particularly in light of developing legal standards which indicate that Plaintiff's claims are valid and that he is entitled to proceed with discovery into the claims alleged in his Second Amended Complaint.

**B.     The prior rulings limit Plaintiff's claim and discovery in a manner inconsistent with the statutory text of Title IX.**

As Plaintiff has consistently counseled, the law of sex discrimination claims under Title IX is developing rapidly, and it has continued to develop through the course of this litigation in favor of Plaintiff's position. Specifically, the Third, Eighth, and Ninth Circuits have followed Judge Barrett's straightforward articulation of the Title IX standard in the Seventh Circuit, which held that the common doctrinal tests for liability (erroneous outcome, selective enforcement, deliberate indifference, and archaic assumptions) are merely four categories describing the multiple ways in which a plaintiff may allege a Title IX claim—i.e., "show that sex was a motivating factor in a university's decision to discipline a student." *Doe v. Purdue Univ.*, 928 F.3d at 667; *see* 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."); *see also Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020) (following the Seventh Circuit); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020) (same); *Doe v. Univ. of Arkansas - Fayetteville*, 19-1842, 2020 WL 5268514, at *4 (8th Cir. Sept. 4, 2020) (citing *Purdue* for the basic Title IX standard).

This simpler articulation of the standard makes sense because it acknowledges the baseline standard of liability under the statute and reconciles the overlap between the four doctrinal theories—an overlap that certainly exists between the erroneous outcome and selective enforcement theories at issue in this lawsuit. This Court should follow the *Purdue* standard in this

case and allow discovery into the bias of Defendant's panel members, which motivated their decision to discipline Plaintiff.

Plaintiff alleged a Title IX claim in his Second Amended Complaint and outlined two theories of liability based on the erroneous outcome and selective enforcement doctrinal theories that have been articulated in case law analyzing Title IX claims.[8] While Plaintiff alleged the two theories separately to satisfy his burden to provide a short and plain statement of a plausible claim for relief under Title IX, *see* Fed. R. Civ. P. 8, Plaintiff also alleged virtually the same set of facts in support of his claim of sex bias under both theories.[9] Indeed, the Court practically acknowledged the conceptual overlap between these theories of liability while considering the allegations during the November 5, 2019 hearing.[10] And while the Court correctly ruled that Plaintiff ultimately pleaded a plausible Title IX claim, the Court also ruled that it would limit Plaintiff's discovery to the extent it would overlap with the erroneous outcome claim.[11] Additionally, the Court repeated its conclusion that only discovery relevant to the selective enforcement theory would be allowed in later orders.[12]

But these conclusions improperly limit Plaintiff's Title IX claim, both at the outset of litigation in hampering Plaintiff's ability to investigate his claims and at the conclusion of trial in limiting the standards by which Plaintiff may prove his statutory claim for relief. For example, while the Court acknowledged Plaintiff's allegation that Defendant offered unequal support to Ms. Shaw during the disciplinary process,[13] the Court also dismissed Plaintiff's Title IX claim under

---

[8] Doc. 42 at ¶¶ 12–22, 23–38.
[9] Doc. 42 at ¶¶ 12–22, 23–38 (particularly, alleging in paragraph 28 that Defendant's history of finding females responsible for similar conduct but providing a less harsh sanction is itself evidence of sex bias motivating the erroneous findings of responsibility).
[10] Exhibit A at 43:14–16 ("I think Ms. Shaw should not need an attorney may go to selective enforcement, I'm not sure.").
[11] Exhibit A at 43:19–25.
[12] Doc. 76 ("[T]he only relevant question in this case is whether Defendant initiated its investigation or punished Plaintiff because of his gender.").
[13] Exhibit A at 43:14–16 ("I think Ms. Shaw should not need an attorney may go to selective enforcement, I'm not sure."); Doc. 42 at ¶ 29.

the erroneous outcome theory. However, Defendant's offer of unequal support to Ms. Shaw—namely, in the form of (1) implying that she would receive a favorable outcome through the disciplinary process by telling her she would not need a lawyer[14] and (2) actually providing her lopsided assistance throughout the disciplinary process[15]—goes to both the erroneous outcome and selective enforcement theories of Title IX liability. Either way, these doctrinal theories do the same thing: they show that Defendant punished Plaintiff because of his sex. *See Doe v. Purdue Univ.*, 928 F.3d at 667. But there is no way to simultaneously acknowledge the allegation of Defendant's offer of unequal assistance throughout the disciplinary process and yet limit Defendant's liability exposure to the investigation and punishment phases of the process, to the exclusion of the merits hearing phase. Respectfully, the rejection of Plaintiff's articulation of the Title IX claim under the erroneous outcome claim constitutes error because it incorrectly disregards these well-pleaded allegations.[16]

Plaintiff adequately alleged facts that support Title IX liability under both an erroneous outcome and a selective enforcement theory, and following the *Purdue* standard would both assist the Court in analyzing Plaintiff's overlapping factual allegations and bring this lawsuit in line with the trajectory of the law as it has developed during the course of this lawsuit. The *Purdue* standard

---

[14] Doc. 42 at ¶ 29.
[15] *Id.*
[16] The Court also explained at the November 5, 2019 hearing that it agreed with Defendant's argument that a person can consent to some sex acts but not to others. Respectfully, however, this explanation offered by Defendants at the pleading stage is insufficient because it completely disregards the temporal dimension of the conduct at issue in favor of Defendant's alternative explanations at the pleading stage. Plaintiff plausibly alleged that the Defendant's panel produced inconsistent findings based on the chronological sequence of the alleged acts (i.e., the panel found that Ms. Shaw did not consent to anal intercourse but then immediately performed consensual oral sex on Plaintiff afterward). Defendant's alternative explanation that Ms. Shaw might not have consented to one act and then immediately reversed course into a consensual act raises grave doubt about the panel's findings. *See Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020) ("But when the degree of doubt passes from 'articulable' to grave, the merits of the decision itself, as a matter of common sense, can support an inference of sex bias."). At the pleading stage, the *McDonnell Douglas* standard should be applied based on these inconsistent and perplexing findings so that Plaintiff may engage in discovery regarding the panel's bias that affected the wrongful decision to discipline him. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1993); Doc. 52 at 22; *see also Doe v. Purdue Univ.*, 928 F.3d at 669 (7th Cir. 2019) (reasoning that a "perplexing" basis of decision can support an inference of sex bias). Respectfully, limiting Plaintiff's claims and discovery based on Defendant's alternative explanations at the pleading stage constitutes error.

moves the analysis of Title IX claims toward a more faithful application of the statute, and it prevents defendant recipients of taxpayer dollars from discriminating on the basis of sex and then creating artificial barriers to discovery and recovery under Title IX. Plaintiff would ask the Court to reconsider its rulings in light of the traction gained by the *Purdue* standard in courts across the country and to allow Plaintiff to engage in discovery into all matters related to Defendant's motivation to discipline Plaintiff because of his sex.

C. **Plaintiff has a viable due process claim under the *Mathews* analysis, particularly in light of the Texas Attorney General's recent concession that the Constitution requires cross-examination and that Defendant has no burden associated with providing attorney cross-examination.**

The Final Rule removed universities' ability to argue that fictional costs outweigh the addition of procedural safeguards to student disciplinary hearings dealing with allegations of sexual misconduct, and the 180-degreee position shift of Defendant's lawyers demonstrates that the *Mathews* balancing tests requires attorney cross-examination in this case. The Brief of the State of Texas filed by Defendant's lawyers unequivocally disavows any burdens associated with the Final Rule, which includes adversarial cross-examination by an attorney.[17] This position change effectively concedes that the due process analysis favors Plaintiff in this case.

Consider the Texas Attorney General's own words:

> The Final Rule eliminates the need for students to suffer irreparable injuries before obtaining due process. It establishes a single, publicized standard that ***conforms to constitutional requirements***. More to the point, it incentivizes academic institutions to meet this standard in advance by conditioning the receipt of federal funds on compliance. ***Should the Final Rule be delayed, then students will have no choice but to try their luck in a proceeding stacked against them***. They may then seek redress through the courts, but legal vindication cannot restore missed opportunities, nor can it revive lost dreams or lost reputations. It is a partial remedy only.[18]

---

[17] Brief of the State of Texas, Doc. 79 at 15, 16–17, 19–20.
[18] Exhibit B, Brief of the State of Texas, Doc. 79 at 22.

Further, in addressing the plaintiff states' alleged burdens, the Texas Attorney General responded: "Plaintiffs have been on notice for years that academic institutions cannot target students accused of sexual harassment for reduced procedural protections."[19] The Texas Attorney General continued: "Plaintiffs and the academic institutions they claim to represent could have heeded the text and spirit of these rulings at any time. Instead, schools, colleges, and universities across the country divested students of due process and waited for the courts to intervene."[20] Moreover, universities, like Defendant, "had notice that their disciplinary policies deviated from the dictates of due process law but did not act."[21]

This full-throated acknowledgment that Defendant has no burden associated with providing attorney cross-examination (i.e., a procedural safeguard under the Final Rule) confirms Plaintiff's analysis of the *Mathews* factors: (1) Plaintiff has an exceedingly high interest in avoiding a sexual predator label being applied to him by Defendant; (2) adversarial attorney cross-examination only aids the legitimacy of the disciplinary proceedings while also adequately protecting the alleged victims;[22] and (3) Defendant has comparatively zero cost in providing Plaintiff with this fundamental procedural safeguard. On balance, the factors tilt in a landslide in favor of Plaintiff, and Defendant's lawyers agree. There simply can no longer be any reasonable dispute that the process due to Plaintiff is a fair hearing that includes live adversarial questioning of the witnesses through attorney cross-examination.

As required by the Constitution and in accordance with the Texas Attorney General's position change, the Court should reconsider its ruling and reinstate Plaintiff's due process claim.

---

[19] *Id.* at 18 (citing *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018), and "noting that the school provided a hearing with cross-examination in all misconduct cases other than those involving sexual assault," just like Texas A&M University provides direct cross-examination to its students in all other cases).
[20] *Id.* at 19.
[21] *Id.*
[22] *Id.* at 15 (the Texas Attorney General argues the same).

### III. CONCLUSION

Accordingly, for the reasons cited herein, Plaintiff Austin Van Overdam respectfully requests that the Court reconsider its ruling on Defendant Texas A&M University's Motion to Dismiss Plaintiff's Second Amended Complaint and the scope of discovery relevant to Plaintiff's Title IX claim. Plaintiff requests that he be allowed to fully investigate his statutory claim for relief under Title IX, and Plaintiff requests that his due process claim be reinstated so that he may immediately move for summary judgment in his favor regarding the same. Plaintiff requests such further relief, in law or equity, general or special, to which Plaintiff may be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By: /s/ *Gaines West*
 GAINES WEST
 State Bar No. 21197500 / SDTX No. 5327
 Email: gaines.west@westwebblaw.com
 JOHN "JAY" RUDINGER, JR.
 State Bar No. 24067852 / SDTX No. 1421393
 Email: jay.rudinger@westwebblaw.com
 KYLE CARNEY
 State Bar No. 24096789 / SDTX No. 3362881
 Email: kyle.carney@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

I hereby certify and aver that on October 9, 2020, I conferred with Ms. Cristina Moreno, counsel of record for Defendant, regarding the relief sought in this motion. Ms. Moreno communicated that Defendant is opposed.

By: s/ *Gaines West*
 GAINES WEST

## **CERTIFICATE OF SERVICE**

   I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on October 9, 2020, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

             By: s/ *Gaines West*_____
                GAINES WEST