UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUSTIN VAN OVERDAM, § § *Plaintiff,* § § v. § § TEXAS A&M UNIVERSITY, § § *Defendant,* § | CASE NO. 4:18-CV-02011 |

**PLAINTIFF AUSTIN VAN OVERDAM'S EMERGENCY MOTION TO COMPEL**

COMES NOW Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and respectfully asks this Court to compel Defendant Texas A&M University's ("Defendant") to reopen the depositions of Dean Anne Reber and Dr. Kristin Harrell, compel certain discovery, and award Plaintiff attorney's fees and costs to reopen these depositions, and would show as follows:

**I.   INTRODUCTION**

Plaintiff noticed and took the depositions of two of Defendant's fact witnesses, Dean Anne Reber and Dr. Kristin Harrell, on October 20 and 26, respectively.[1] Defendant had previously identified these witnesses as possibly having relevant information in Defendant's Rule 26 Initial Disclosures, attached as Exhibit A. Throughout each deposition, counsel for Defendant, Cristina Moreno, lodged numerous inappropriate and impeding objections. The most frequent objection was that these witnesses were not Defendant's designated Rule 30(b)(6) corporate representatives and could therefore not "bind" Defendant. *See* Excerpts of Deposition of A. Reber, October 20,

---

[1] These witnesses were previously noticed for deposition back in March, but the onset of the pandemic created barriers to the initiation of depositions. On instruction from the Court, the Parties agreed on these deposition dates in advance, and Plaintiff accordingly noticed the depositions. These depositions were noticed four times before finally being started in October.

2020, attached as Exhibit B; Excerpts of Deposition of K. Harrell, October 26, 2020, attached as Exhibit C; Excerpts of Deposition of J. Ford, October 22, 2020, attached as Exhibit D. Ms. Moreno later used this same objection to prevent the witnesses from answering questions.

During the time in which the Parties were attempting to schedule these depositions, counsel for Defendant repeatedly promised to produce certain documents responsive to Plaintiff's January 24, 2020, discovery requests. *See* Misc. email communications between counsel, attached as Exhibit E. Plaintiff relied on these promises in scheduling the depositions, hoping that they would be produced prior to the depositions. *Id*. However, Defendant went radio silent and failed to produce responsive discovery prior to the depositions, despite having had these requests for nearly nine months. *See* Plaintiff's First Interrogatories, at Interrogatory No. 10, attached as Exhibit F (this Interrogatory also asks Defendant to "[a]ttach a copy or state where and when counsel may examine a copy of the complaint"); Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19, attached as Exhibit G; *see also* Exhibit E at p. 26 (email to Ms. Moreno identifying which requests sought information regarding complaints; Ms. Moreno did not respond).

Defendant's conduct thus far has been incredibly obstructive to Plaintiff's ability to obtain necessary discovery. As such, Plaintiff has postponed the pending and previously-noticed depositions of Robin Shuglie, Kyle McCracken, and Jaclyn Upshaw-Brown and is requesting Court intervention to ensure that this misconduct does not continue throughout the remainder of discovery in this matter. Plaintiff respectfully requests that this Court compel Defendant to reopen the depositions of Dean Reber and Dr. Harrell and pay Plaintiff's attorneys fees and costs to reopen these depositions. Plaintiff also respectfully asks that the Court compel Defendant to produce documents responsive to Plaintiff's discovery requests.

This Motion to Compel is an emergency motion made not for the purposes of delay but to quickly rectify misconduct made during discovery and ensure that the Parties are able to continue discovery without needing a continuance.

## II. ARGUMENT AND AUTHORITIES

### A. Standard of law.

"[P]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the claim or defense of any party." FED R. CIV. P. 26(b)(1). There is a "presumption in favor of broad discovery," and the burden rests on the party resisting discovery to overcome this presumption. *Kinney v. Select Portfolio Servs.*, 2015 WL 7871044, at *2 (S.D.Tex. Dec. 3, 2015) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470–71 (N.D. Tex. 2005)). "Where relevance is in doubt, the court should be permissive in allowing discovery." *Id.* (citing *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) ("The threshold for relevance at the discovery stage is lower than at the trial stage.")).

Federal Rule of Civil Procedure 30(c)(2) states that objections lodged during deposition "must be stated concisely **in a nonargumentative and nonsuggestive manner**. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." FED. R. CIV. P. 30(c)(2) (emphasis added). "'The underlying purpose of a deposition is to find out what a witness saw, heard, or did . . . . [T]here is no proper need for the witness's own lawyer to act as intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers.'" *VirnetX Inc. v. Cisco Sys., Inc.*, 2012 WL 7997962, at *3 (E.D. Tex. Aug. 8, 2012) (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993)). "The scope of appropriate deposition questioning is not circumscribed by the claims and

defenses explicitly set forth in formal pleadings." *Genband US LLC v. Metaswitch Networks Ltd.*, 2016 WL 9211657, at *1 (E.D. Tex. Nov. 21, 2016).

The Federal Rules have long required objections to be stated with specificity. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Moreover "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). Under Rule 33, "[t]he grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(3)-(4).

**B. Defendant's conduct during the depositions violates the Federal Rules of Civil Procedure.**

The conduct of counsel for Defendant during the four depositions that have occurred thus far is nothing short of astounding. Ms. Moreno lodged a series of improper deposition objections throughout the depositions, including "overbroad," "seeks lay opinion," "outside the bounds of permissible discovery," "leading" (these are not Plaintiff's witnesses), and in some cases just stating "objection" with no basis at all. *See* Exhibit B at 111:14-19, 125:4-6; Exhibit D at 11:21-12:5, 35:21-22, 38:24-39:17, 53:23-24. In an effort to curtail some of these impeding objections, the Parties at times agreed to a "standing objection," only to have Ms. Moreno then repeatedly object "subject to our standing objection." *See* Exhibit B at 110:14-16, 110:23-24, 111:3-4. During a series of questions in which counsel for Plaintiff, Ms. Pate, was asking the deponent as to whether or not she had seen or witnessed gender bias or discrimination on campus—literally the heart of any Title IX-related claim—Ms. Moreno lodged *fourteen* "relevance" objections and 22 other objections and accused Ms. Pate of harassing the witness. Exhibit D at 46-54.

Even further, Ms. Moreno would often frame her objections in a way that appeared to coach the witness. *See* Exhibit B at 42:3-25 (during a series of questions probing Dean Reber's expertise

in her field, Ms. Moreno interrupted a question and objected that Plaintiff was asking the witness to designate an expert); *id*. at 164:9-14, 217:19-25 (instead of objecting concisely, such as "lack of foundation," Ms. Moreno would offer an extensive coaching objection such as, "This witness has also made it clear she lacks personal knowledge on these issues" or "the witness has testified she did not prepare this presentation. She doesn't know the audience for this presentation, and she has no personal knowledge of it. Your questions at this point are simply to harass Ms. Reber and extend the time of this deposition by asking continued irrelevant questions that are not part of this lawsuit."); Exhibit D at 49:16-50:3.

The combination of these improper objections with Ms. Moreno's countless other objections effectively stalled the deponents' answers and prevented the depositions from proceeding efficiently, not to mention ruining any chance of a clean and clear record. To illustrate, Ms. Moreno lodged nearly 400 objections during Dean Reber's deposition. *See generally* Exhibit B. During the deposition of Jennifer Ford, Ms. Moreno's lengthy objections resulted in Plaintiff's counsel repeatedly having to restate the question for the confused witness. *See generally* Exhibit D and at 45:1-20 (Ms. Moreno objecting without permitting Ms. Pate to ask a question, then objecting with a string of five objections, requiring the witness to need the question repeated).

The most egregious conduct lay with Ms. Moreno's misinterpretation of Rule 30(b)(6). Despite these witnesses being identified as potential fact witnesses by Defendant (note that Dean Reber has been Dean of Student Life at Defendant for over ten years, and her office receives complaints of sexual misconduct and investigates those complaints prior to charges being filed), Ms. Moreno apparently believes that a fact witness, even one designated by Defendant, cannot "bind" Defendant as long as that witness is not Defendant's designated to Rule 30(b)(6) corporate representative. Ms. Moreno also apparently wrongly believes this is grounds to instruct a fact

witness not to answer a question. FED. R. CIV. P. 30(c)(2). This is a misuse of Rule 30(b)(6), effectively attempting to use it as a sword.

This improper objection was lodged a total of **31 times** during Dean Reber's deposition, **21 times** during Dr. Harrell's deposition, and **11 times** during Ms. Ford's deposition. *See, e.g.*, Exhibit B at 64:2-16, 127:16-18; Exhibit C at 128:11-15, 133:20-21; Exhibit D at 45:13-16. At the start of the fourth deposition, that of Melissa Williams, Ms. Moreno, aware of the disruptive effect this objection was having on the depositions, attempted to force counsel for Plaintiff into agreeing in advance that the witness could not "bind" Defendant. *See* Excerpts of Deposition of M. Williams, October 22, 2020, attached as Exhibit H, at 10:15-12:17. Ms. Moreno later used this same objection to prevent the deponents from answering questions related to subpoenas for documents served on them in their *individual* capacity. *See* Exhibit B; Exhibit C at 17:2-18:16, 20:8-21; Exhibit D at 10:25-12:5. Ms. Moreno was also deceptive as to whether she represented these witnesses in their individual capacity, making Plaintiff's ability to obtain certain discovery from these witnesses difficult. *See infra*.

On the basis of this objection and others, Ms. Moreno instructed Dean Reber not to answer questions regarding: who at Defendant Dean Reber looked to for expertise in the application of Title IX, Exhibit B at 43:1-13; whether Defendant was concerned about the conduct of its students, *id*. at 56:8-16; two follow up questions about her role at Defendant's institution, *id*. at 62:8-63:4; whether Ms. Moreno represented Dean Reber, *id*. at 68:2-6; regarding discovery responses with information compiled in part by Dean Reber, *id*. at 243:4-244:6; what Dean Reber knew about a certain comment made by an officer at Defendant, *id*. at 180:13-20. Importantly, none of these instructions not to answer were made to "preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)," except for the latter, to which Ms. Moreno objected "privilege as to what was in Mr. Brown's mind." FED. R. CIV. P. 30(c)(2); Exhibit B at

180:13-20. Similarly, using the same improper 30(b)(6) objection, Ms. Moreno prevented Dr. Harrell from answering questions regarding discovery responses *verified* by Dr. Harrell. *See* Exhibit C at 258:7-261:13. Ms. Moreno threatened to conclude the deposition if counsel for Plaintiff continued the line of questioning regarding Defendant's discovery responses. *Id*.

Ms. Moreno's conduct violated Rule 30, and the extensive arguments between counsel on the record establishes Ms. Moreno's actions were wholly in bad faith. Plaintiff believes Ms. Moreno has taken a misunderstanding regarding the permissibility of objections, which was cleared up by counsel in a previous deposition, and elevated it into a bad-faith attempt to derail all future depositions. This dispute, and the efforts of Ms. Moreno to impede the deposition, was entered into the record by Plaintiff. *See* Exhibit B at 219:19-220:15. Accordingly, sanctions are warranted here in the form of reopening the Reber and Harrell depositions and attorney's fees and costs for reopening the depositions, and for the fees and costs in pursuing this Motion to Compel.

### C. Defendant should produce discovery regarding complaints filed by students.

Courts have frequently acknowledged that information regarding the complaints filed by students is relevant to selective enforcement claims. *See Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019) (previously cited by Defendant; noting that "similarly situated female students were treated more favorably than" males and that "systemic gender bias" on campus affected *the decision to investigate* or the severity of sanctions is relevant for claim of selective enforcement); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (noting that university's encouragement of female student to file a complaint but, upon receiving actionable information from a male student and that university "did not encourage him to file a complaint, consider the information, or otherwise investigate" are relevant for claim of selective enforcement); *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 413 n.11 (D.R.I. 2018) ("[t]hat a male victim's complaint was not investigated while a female non-victim's was" is relevant for claim of

selective enforcement); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (that a university "administration was cognizant of, and sensitive to," criticism from the "student body" and "public media" "accusing the [u]niversity of not taking seriously complaints of female students alleging sexual assault by male students," is relevant for claim of selective enforcement); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715-16 (2d Cir. 1994) (noting that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender" is relevant for claim of selective enforcement).

Previously, Defendant relied heavily on the Protective Order to severely limit its production of relevant discovery. The Protective Order impliedly and unintentionally limited the selective enforcement claim to only a few months in which Plaintiff was charged and sanctioned. However, the Court confirmed that this was not its intent, holding that the Protective Order "does not foreclose other evidence relating to events that occurred outside of the time period during which Plaintiff was being investigated, as long as that evidence is relevant to the claim at hand." Dkt. 81. Shortly thereafter, Defendant began 'reassuring' Plaintiff that a significant production of information was forthcoming. *See* Exhibit E. Plaintiff checked on the status of this forthcoming discovery on May 26 and 31, June 28, August 17, September 4, and finally on October 2. *Id*. However, Defendant failed to produce responsive discovery prior to the depositions. *See* Plaintiff's First Amended Interrogatories, at Interrogatory No. 10, attached as Exhibit F; Plaintiff's First Amended Requests for Production, at Request Nos. 10, 14, 17, attached as Exhibit G; *see also* Exhibit E at p. 26.[2]

---

[2] Plaintiff has also propounded additional discovery requests regarding the complaints, and Ms. Moreno apparently relies on these new requests as grounds to withhold the discovery until the new requests are due. *See* Exhibit E at pp. 29-33. However, Plaintiff believes its previous discovery requests are clear in requesting this information, has made these grounds known to Defendant repeatedly, and for this reason seeks Court intervention now. *Id*.

Defendant, relying on the *Yusuf* case, has repeatedly claimed that the "only question" is whether Defendant "*initiated its investigation* or punished Plaintiff" based on gender, and now Defendant refuses to produce, or is otherwise delaying the production of, information regarding the complaints of sexual misconduct lodged by students with Defendant. However, it cannot be disputed that the decision to initiate an investigation must start with a complaint. It is implausible to think that there are documents that are in Defendant's possession related only to investigations but not complaints, and, indeed, Defendant's witnesses confirmed that the investigation reports compiled by Defendant prior to charging students with sexual misconduct usually contain the complaint itself. Importantly, there is no question that Defendant is in possession of the information sought by Plaintiff and that it is relevant to Plaintiff's claim, which Defendant admits, and Defendant has admitted that it has either gathered or identified responsive documents. *See* Exhibit E; *see also* Exhibit D at 55:20-56:25 (noting that complaints are received by Dean Reber, who is the *sole decisionmaker* regarding the decision to initiate an investigation and that complaints are received in hard copy by investigators); Exhibit C at 94:3-13, 205:3-11 (noting that complaints are retained electronically and gender of complainant is recorded).

Even so, it is clear that Defendant intends to operate outside the bounds of the Federal Rules of Civil Procedure, instruction from this Court, and the agreement of the Parties, and will require an order from this Court compelling production of this relevant information. With the Court's Order, Dkt. 81, Defendant is left without any support for its failure to respond fully; Defendant's other objections to the discovery are meaningless boilerplate without the requisite specificity. *See* FED. R. CIV. P. 34(b)(2)(B). Plaintiff therefore requests that this Court compel Defendant to produce evidence responsive to Plaintiff's discovery requests seeking information regarding the complaints.

### D. Sanctions are warranted here.

Rule 30 enables a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). "'The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule.'" *Nieman v. Hale*, 2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014) (quoting *Howell v. Avante Servs., LLC*, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) ). Rule 37 further enables a court to compel discovery when a party has failed to properly respond pursuant to Federal Rules of Civil Procedure 33 and 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). In addition, where a court grants a motion to compel discovery, Rule 37(a)(5) mandates the award of fees and expenses to the movant, unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37 (a)(5)(A).

Discovery in this matter has been ongoing for over ten months, and, to date, Plaintiff has received next to nothing relevant to its claim of selective enforcement. The initial assurances of Defendant led Plaintiff to believe that responsive discovery would be provided without needing Court intervention, but the repeated delays and disingenuous promises over the last six months have confirmed that Defendant requires a Court order to obey the Rules. Moreover, Plaintiff also hoped that certain important discovery would be obtained through the fact witnesses identified by Defendant, only to be effectively blocked from obtaining this testimony by the bizarre and countless objections lodged by counsel for Defendant. There can be no question that counsel impeded, delayed, and frustrated the fair examination of these witnesses. Defendant's conduct is unacceptable and should be sanctioned to prevent further abuses of the discovery process.

For these reasons, Plaintiff requests that the Court compel Defendant to reopen the Reber and Harrell depositions and permit Plaintiff to obtain the relevant and necessary testimony without argumentative and obstructive objections and improper instructions not to respond by Defendant. Plaintiff also requests that the Court instruct counsel for Defendant to immediately refrain from further impeding, delaying, and frustrating Plaintiff's efforts to obtain discovery about the matters at issue in this case. Plaintiff also asks that the Court compel Defendant to produce the discovery identified herein prior to the reopening of these depositions. Finally, Plaintiff asks that the Court award Plaintiff its attorney's fees and costs for filing this Motion to Compel and for reopening the depositions.

### III.   CONCLUSION

Accordingly, for the reasons cited herein, Plaintiff Austin Van Overdam respectfully requests that the Court compel Defendant Texas A&M University to reopen the depositions of Dean Anne Reber and Dr. Kristin Harrell, pay Plaintiff's attorney's fees and costs to reopen these depositions, and to provide the information responsive to Plaintiff's discovery requests set forth herein. Plaintiff further requests an instruction from this Court warning counsel for Defendant to not further engage in tactics aimed at impeding, delaying, and frustrating the discovery of information in this matter. Plaintiff also requests other relief, at law or in equity, to which he may be entitled.

        Respectfully submitted,

        **WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
        1515 Emerald Plaza
        College Station, Texas 77845-1515
        Telephone: (979) 694-7000
        Facsimile: (979) 694-8000

By: /s/ *Gaines West*
    GAINES WEST
    State Bar No. 21197500 / SDTX No. 5327
    Email: gaines.west@westwebblaw.com
    JOHN "JAY" RUDINGER, JR.
    State Bar No. 24067852 / SDTX No. 1421393
    Email: jay.rudinger@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

I hereby certify that on April 27, May 26 and 31, June 28, August 17, September 4, and October 2, 2020, counsel for Plaintiff communicated via letter and email with counsel for Defendant regarding the discovery requested herein. I also hereby certify that on November 5 and 8-12, 2020, I communicated with Ms. Moreno regarding the relief requested herein. The Parties were unable to reach an accord regarding this relief.

        /s/ *Gaines West*
        GAINES WEST

### CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on November 12, 2020, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

        /s/ *Gaines West*
        GAINES WEST