## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CASE NO. 4:18-CV-02011** |
| **v.** | § | |
| | § | |
| **TEXAS A&M UNIVERSITY,** | § | |
| | § | |
| *Defendant,* | § | |

---

### PLAINTIFF AUSTIN VAN OVERDAM'S EMERGENCY MOTION TO COMPEL

---

WEST, WEBB, ALLBRITTON & GENTRY, P.C.
1515 Emerald Plaza
College Station, Texas 77845
979.694.7000 ~ Telephone
979.694.8000 ~ Facsimile

GAINES WEST
State Bar No. 21197500 / SDTX No. 5327
Email:  gaines.west@westwebblaw.com
JOHN "JAY" RUDINGER, JR.
State Bar No. 24067852 / SDTX No. 1421393
Email: jay.rudinger@westwebblaw.com
KYLE CARNEY
State Bar No. 24096789 / SDTX No. 3362881
Email: kyle.carney@westwebblaw.com


**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ii

TABLE OF AUTHORITIES ................................................................iii

    I.      INTRODUCTION AND NATURE OF THE PROCEEDING .........1

    II.     SUMMARY OF THE ARGUMENT ................................................3

    III.    ISSUES FOR REVIEW ....................................................................5

    IV.    ARGUMENT AND AUTHORITIES ................................................5

        A.  Legal Standard ............................................................................5

        B.  Defendant must produce discovery regarding (1) complaints filed by students, (2) investigation reports, and (3) documents related to Defendant's decisions about whether to (a) investigate, (b) charge, or (c) sanction a student ....................................................................6

             1.  The scope of discovery is appropriate, and Defendant has no substantial burden with respect to producing documents ..........................................................6

             2.  Defendant has no special burden associated with this production, and the requests are proportional to the needs of the case ..........................................................13

             3.  Defendant must produce requested codes and passwords to make spreadsheets usable ........................18

        C.  Sanctions are Warranted Here ..................................................21

    V.      CONCLUSION ...............................................................................22

CERTIFICATE OF CONFERENCE.....................................................24

CERTIFICATE OF SERVICE .............................................................24

# TABLE OF AUTHORITIES

## Cases

*A.M. Castle & Co. v. Byrne*,
    123 F. Supp. 3d 895, 899 n.2 (S.D. Tex. 2015) ....................................................18

*Carr v. State Farm Mut. Auto. Ins. Co.*,
    312 F.R.D. 459, 468 (N.D. Tex. 2015) ...................................................................6

*Corker v. Wholesale*,
    C19-0290RSL, 2020 WL 1987060, at *1 (W.D. Wash. Apr. 27, 2020) ..............19

*Doe v. Amherst Coll.*,
    238 F. Supp. 3d 195, 223 (D. Mass. 2017) ............................................................7

*Doe v. Brown Univ.*,
    327 F. Supp. 3d 397, 413 n.11 (D.R.I. 2018) .........................................................7

*Doe v. Columbia Univ.*,
    831 F.3d 46, 57 (2d Cir. 2016) ...............................................................................7

*Garza v. Scott & White Mem'l Hosp.*,
    234 F.R.D. 617, 624 (W.D. Tex. 2005) .................................................................14

*Howell v. Avante Servs., LLC*,
    2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) ..................................................21

*Kinney v. Select Portfolio Servs.*,
    2015 WL 7871044, at *2 (S.D. Tex. Dec. 3, 2015) .................................................5

*Klocke v. Univ. of Texas at Arlington*,
    938 F.3d 204, 213 (5th Cir. 2019) ...........................................................6, 14, 15

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482, 1485 (5th Cir. 1990) ......................................................................6

*Merrill v. Waffle House, Inc.*,
    227 F.R.D. 467, 470–71 (N.D. Tex. 2005) .............................................................5

*Nieman v. Hale*,
    2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014).............................................21

*Rangel v. Gonzalez Mascorro*,
    274 F.R.D. 585, 590 (S.D. Tex. 2011).....................................................................6

*Garza v. Scott & White Mem'l Hosp.*,
    234 F.R.D. 617, 624 (W.D. Tex. 2005) (Sparks, J.) .............................................14

*Yusuf v. Vassar Coll.*,
    35 F.3d 709, 715-16 (2d Cir. 1994) .........................................................7, 14, 17

**Rules**

Fed R. Civ. P. 26(b)(1) .........................................................................................5

Fed. R. Civ. P. 30(d)(2) .......................................................................................21

Fed. R. Civ. P. 34(b)(1)(C) ...............................................................................18

Fed. R. Civ. P. (b)(2)(E)(i)-(ii) .........................................................................18

Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) .................................................................22

Fed. R. Civ. P. 37 (a)(5)(A) ...............................................................................22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CASE NO. 4:18-CV-02011** |
| **v.** | § | |
| | § | |
| **TEXAS A&M UNIVERSITY,** | § | |
| | § | |
| *Defendant,* | § | |

---

**PLAINTIFF AUSTIN VAN OVERDAM'S EMERGENCY MOTION TO COMPEL**

---

COMES NOW Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and respectfully asks this Court to compel Defendant Texas A&M University ("Defendant") to produce certain discovery, and to award Plaintiff attorney's fees and costs. In support, Plaintiff would show as follows:

### I.   INTRODUCTION AND NATURE OF THE PROCEEDING

Despite Plaintiff's many attempts, over several months, to self-limit requests and take a cooperative approach to discovery, Defendant has refused to produce student Title IX complaints, investigation notes, and related documents that are necessary for Plaintiff's remaining depositions, and extended time depositions. Additionally, Defendant has failed to produce codes and passwords necessary to use the limited data which has been produced, albeit in a locked and unusable format, in direct defiance of Plaintiff's discovery requests. Because of Defendant's obstinance, Plaintiff must now ask the Court for relief to compel Defendant to produce these relevant and necessary documents.

Plaintiff was previously forced to compel the reopening of the depositions of two of Defendant's fact witnesses, Dean Anne Reber and Dr. Kristin Harrell, because counsel for Defendant, Cristina Moreno, had engaged in obstructive conduct, routinely lodging baseless objections and inappropriately preventing the witnesses from answering questions.[1] Additionally, although Ms. Moreno had previously promised to produce certain documents responsive to Plaintiff's January 24, 2020, discovery requests and Plaintiff had relied upon these promises,[2] she failed to produce responsive discovery prior to the depositions, despite having had these requests for nearly nine months.[3]

Following this obstructive conduct, at an emergency hearing, the Court ordered Defendant to make Reber and Harrell available for two more hours of depositions not to be further impeded by Defendant's counsel. Additionally, at this hearing, and in pleadings preceding the hearing, Defendant's counsel made certain representations to the Court regarding discovery produced thus far. Defendant's counsel indicated that she had produced spreadsheets (one claimed to be created by Dr. Harrell, which was a surprise to Plaintiff) that were searchable and a sufficient replacement for the source documents. In fact, these spreadsheets—some totaling over 1,500 rows of Excel data entries—were protected, meaning not only were they practically unsearchable but also they could not be filtered or the cells expanded to read the entirety of the entries, rendering them effectively unusable. They were also largely made up of notes and phrases, the meaning of which is not clear on the face of the spreadsheets. Defendant now refuses to produce the requested ***source documents*** or even cooperate with providing codes and or passwords to access the full content and

---

[1] *See* Ex. A, Minute Order (providing instructions for Defendant's counsel on how to conduct herself in future depositions).

[2] *See* Misc. email communications between counsel, attached as Exhibit B.

[3] *See* Plaintiff's First Interrogatories, at Interrogatory No. 10, attached as Exhibit C (this Interrogatory also asks Defendant to "[a]ttach a copy or state where and when counsel may examine a copy of the complaint"); Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19, attached as Exhibit D; *see also* Exhibit B (email to Ms. Moreno identifying which requests sought information regarding complaints).

functions of the spreadsheets. As a result, Plaintiff must move to compel the requested passwords and source documents that are being unreasonably withheld in an apparent attempt to frustrate the remaining depositions and the overall discovery process.

## II.     SUMMARY OF THE ARGUMENT

As a result of Defendant's counsel's multiple attempts to impeded and frustrate Plaintiff's discovery requests, Plaintiff is forced to seek relief from the Court in the form of an order compelling production of the following documents:

- Student complaints about sexual misconduct;[4]
- Defendant's internal reports and communications related to student complaints;[5]
- Defendant's documents and communications related to the decisions to (a) investigate and (b) charge a student;[6]
- Codes or passwords necessary to unlock Defendant's spreadsheets containing data related to Title IX investigations and proceedings;[7]
- Defendant's documents and data available since 2011, which is the time when Defendant began investigating and prosecuting sexual misconduct complaints after the "Dear Colleague Letter"[8]

These documents are necessary so that Plaintiff may examine the remaining deponents regarding their treatment of male versus female students at the investigation, charging, and punishment phases of Defendant's Title IX process. Additionally, Plaintiff needs the requested documents to investigate Defendant's defenses regarding comparators and to fully prepare his case for trial with the data relevant to his claims. Defendant has so far only produced cryptic

---

[4] Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19; Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 33, and 35.
[5] Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19; Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 32, 33, 34, 35, 36, 37, 38, 39 and 40.
[6] *Id.*
[7] Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19 (encompassed by instructions provided on Page 3); Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 33, and 35 (same).
[8] Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19. Defendant previously limited production to a narrower date range, from about 2014-2018, but gave no reason for omitting the 2011-2014 documents available—particularly since Dean Anne Reber, the same individual making investigation and charging decisions at the time of Plaintiff's discipline, was working in the same or similar capacity in 2011. Ex. F. While Plaintiff attempted to work with Defendant within that range, Defendant's obstruction has forced Plaintiff to seek relief from the Court and, therefore, Plaintiff now asks for the Court to order production of all documents within the requested date range—between 2011 and 2018.

spreadsheets displaying compiled data from the requested source documents, and those spreadsheets are locked so that data cannot be filtered. Moreover, the datasets do not have a key to help interpret Defendant's ambiguous notations, and Defendant has been unwilling to answer basic questions to help make the documents useful, instead arguing that Plaintiff must use deposition time—which has already been wasted by Defendant—to ask the remaining witnesses how to decipher the spreadsheets, before being able to prepare questions for the witnesses about the data itself. Despite Plaintiff's efforts to continually narrow the scope of the requests and offers to treat the documents confidentially and enter a protective order to that effect, counsel for Defendants has refused to produce responsive documents, including the above-listed records.

Thus, Plaintiff respectfully requests that the Court immediately compel Defendant to produce the above-requested documents. Additionally, Plaintiff requests that the Court order Defendant to produce documents in accordance with the full scope of Plaintiff's requests, including all responsive documents for the years 2011 through 2018.

Furthermore, because Defendant's conduct has continued to prevent Plaintiff from preparing for the remaining depositions and from obtaining the discovery necessary to properly prosecute his claims, Plaintiff further requests that the Court award one or more of the following discovery sanctions against Defendants: (1) grant a continuance of three additional months for discovery so that Plaintiff may prepare his case upon production of the requested documents; (2) grant an extension of Plaintiff's deadline to designate an expert witness; (3) enter an order granting an adverse inference against Defendant; and (4) award attorney fees and costs in favor of Plaintiff against Defendant or Ms. Moreno.

This Motion to Compel is an emergency motion made not for the purposes of delay but to quickly rectify misconduct made during discovery and ensure that the Parties are able to conduct

discovery in an efficient manner. Much of the information requested herein was previously requested in Plaintiff's Emergency Motion to Compel, Dkt. 94. At the hearing on this motion, the Court did not enter a ruling on the document requests.

### III.    ISSUES FOR REVIEW

1.    Whether the Court should compel production of the following documents: (1) Student complaints about sexual misconduct; (2) Defendant's internal reports and communications related to student complaints; (3) Defendant's documents and communications related to the decisions to (a) investigate and (b) charge a student; (4) Codes or passwords necessary to unlock Defendant's spreadsheets containing data related to Title IX investigations and proceedings; and (5) Defendant's documents and data available since 2011.

2.    Whether the Court should award the following sanctions: (1) grant a continuance of three additional months for discovery so that Plaintiff may prepare his case upon production of the requested documents; (2) grant an extension of Plaintiff's deadline to designate an expert witness; (3) enter an order granting an adverse inference against Defendant; and (4) award attorney fees and costs in favor of Plaintiff against Defendant or Ms. Moreno.

### IV.    ARGUMENT AND AUTHORITIES

**A.  Legal Standard**

"[P]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the claim or defense of any party." FED R. CIV. P. 26(b)(1). There is a "presumption in favor of broad discovery," and the burden rests on the party resisting discovery to overcome this presumption. *Kinney v. Select Portfolio Servs.*, 2015 WL 7871044, at *2 (S.D. Tex. Dec. 3, 2015) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470–71 (N.D. Tex. 2005)). "Where relevance is in doubt, the court should be permissive in allowing discovery."

*Id.* (citing *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) ("The threshold for relevance at the discovery stage is lower than at the trial stage.")).

On a motion to compel, "a party seeking to resist discovery . . . bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015). The party seeking discovery may have to oppose this showing, but "the basic allocation of the burden" remains "on the party resisting discovery to . . . specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable." *Id.* at 469 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). The resisting party must then "show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* at 463.

**B.  Defendant must produce discovery regarding (1) complaints filed by students, (2) investigation reports, and (3) documents related to Defendant's decisions about whether to (a) investigate, (b) charge, or (c) sanction a student.**

*1.  The scope of discovery is appropriate, and Defendant has no substantial burden with respect to producing documents.*

Courts have frequently acknowledged that information regarding the complaints filed by students is relevant to selective enforcement claims. *See Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019) (previously cited by Defendant; noting that "similarly situated

female students were treated more favorably than" males and that "systemic gender bias" on campus affected *the decision to investigate* or the severity of sanctions is relevant for claim of selective enforcement); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (noting that university's encouragement of female student to file a complaint but, upon receiving actionable information from a male student and that university "did not encourage him to file a complaint, consider the information, or otherwise investigate" are relevant for claim of selective enforcement); *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 413 n.11 (D.R.I. 2018) ("[t]hat a male victim's complaint was not investigated while a female non-victim's was" is relevant for claim of selective enforcement); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (that a university "administration was cognizant of, and sensitive to," criticism from the "student body" and "public media" "accusing the [u]niversity of not taking seriously complaints of female students alleging sexual assault by male students," is relevant for claim of selective enforcement); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715-16 (2d Cir. 1994) (noting that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender" is relevant for claim of selective enforcement).

Because the complaints filed by students are relevant to Defendant's decisions to either investigate or charge a student, these documents are necessary for Plaintiff to be able to depose the remaining witnesses and to completely investigate Plaintiff's selective enforcement claim. Defendant's witnesses have admitted that Defendant possesses these documents,[9] which were maintained in both hard copy and electronic format and presented to investigators prior to initiating an investigation.  Even further, Defendant's employee, Dean Anne Reber, was the sole decision maker concerning whether to investigate students, making these complaints incredibly relevant to

---

[9] Exhibit M at 55:20-56:25; Exhibit N at 94:3-13; 127:1-16.

a claim of selective enforcement, where decisionmaker bias is an important consideration. Without the requested documents, it will be impossible to question Ms. Reber about other student cases.

Plaintiff has tried to get this information for months, since at least August 2020, and this dispute was a subject of the previous emergency hearing on Plaintiff's initial motion to compel. However, Defendant's counsel has refused to cooperate or find any middle ground and has brought the parties back to the same position they were in prior to the earlier hearing. For example, see this email sent prior to the last motion to compel hearing, back in October:



| | |
|---|---|
| **From:** | Cheyenne Pate |
| **To:** | "Moreno, Cristina" |
| **Cc:** | Gaines West; Billy Hart; Jay Rudinger; "Luna, Rosalinda"; "Daaboul, Rola" |
| **Subject:** | RE: Van Overdam v. TAMU - quick questions re discovery |
| **Date:** | Friday, October 9, 2020 9:37:00 PM |
| **Attachments:** | image001.jpg |

Cristina,

I wanted to check on the letter without a gender and see if you were able to find that out.

I'd also like confirmation as to whether you will produce the complaints and investigations as we discussed. If not, please let me know so we can seek those from the Court. The popular Fifth Circuit case, repeatedly cited by both Plaintiff and Defendant, *Klocke*, considers the stats regarding complaints to investigations to charges to sanctions, so this information is extremely relevant to our claims and your defenses.

Have a good weekend!

Cheyenne

WWAG Signature

**Cheyenne Pate • Attorney**
West, Webb, Allbritton & Gentry, P.C.
1515 Emerald Plaza • College Station, Texas 77845
Ph:  (979) 694-7000
Fax: (979) 694-8000
cheyenne.pate@westwebb.law
• web •

Ex. G. After much more back and forth following the recent motion to compel hearing, Plaintiff's counsel tried again to reason with Defendant's counsel:

| From: | Gaines West |
|---|---|
| To: | Moreno, Cristina |
| Cc: | Luna, Rosalinda; Jay Rudinger; Cheyenne Pate; Billy Hart; Email Server |
| Date: | Thursday, November 5, 2020 4:55:00 PM |
| Attachments: | image001.jpg |

I disagree with your representations. The Complaints, as you well know, have been withheld since at least August. The only reason any other RFP was tendered was as a courtesy to you. If you are going to continue stonewalling getting these documents to us, you further thwart and obstruct my ability to obtain discovery from the remaining witnesses thereby necessitating intervention by the Court.

I am simply pulling down the notices on Shuglie and McCracken and will re-notice them after the Court gives us instructions on how to proceed without you obstructing our efforts to conduct discovery. The depositions of Shuglie and McCracken have not been cancelled. The notices for them to be deposed next week have simply been withdrawn – I will notice them again. gaines



**Gaines West • Partner**
West, Webb, Allbritton & Gentry, P.C.
**Principal Office:**
**1515 Emerald Plaza • College Station, Texas 77845**
Ph: (979) 694-7000
Fax: (979) 694-8000

Ex. I. Instead of producing the requested documents, Defendant has withheld production of student complaints and investigation related documents and attempted to force Plaintiff to conduct depositions without the source documents (i.e., student complaints and investigation notes) that would allow Plaintiff to question the deponents concerning their selection for which students would be investigated and prosecuted. So Plaintiff's counsel tried once again to reason with Defendant's counsel:

**From:** Gaines West <gaines.west@westwebblaw.com>
**Sent:** Monday, December 14, 2020 3:48 PM
**To:** Moreno, Cristina <Cristina.Moreno@oag.texas.gov>
**Cc:** Luna, Rosalinda <Rosalinda.Luna@oag.texas.gov>; Jay Rudinger <jay.rudinger@westwebblaw.com>; Cheyenne Pate <Cheyenne.Pate@westwebblaw.com>; Kyle Carney <Kyle.Carney@westwebblaw.com>; Billy Hart <billy.hart@westwebblaw.com>; Email Server <Docs@westwebblaw.com>
**Subject:** Response to your 12/11/2020 email

I will address your response in the same order you provided to make things easy.

. . . .

9

Regarding your suggestion that you are withholding the source documents due to the requests not being limited in scope, the Rules require that you clearly state on which objections you are refusing to withhold documents, so I was unaware that you were standing on this objection as a basis for withholding those source documents. At Rola's request nearly ten months ago, we limited the time frame. Moreover, we have never objected to your self-limiting of these requests to only female comparators accused of "sexual misconduct" similar in nature to what Plaintiff was accused of. As such, these requests have already been severely limited in scope—namely, by you and Rola—and are not able to be further limited. Moreover, your unilateral limitations are meritless, as the relevant time period for discovery should go back at least until 2011 after the Dear Colleague Letter was issued, and what you unilaterally deem as a "comparator" is not a proper limitation on discovery requests. Under a fair and reasonable discovery process, we should be able to review the documents requested that are related to all student sexual misconduct complaints, for both males and females, since 2011, which is calculated to lead to the discovery of admissible comparator evidence within that very reasonable scope related to Van Overdam's selective enforcement claim. But you have not even given us what we requested within the more limited time frame that you yourself set.

As I have said now numerous times, and as you have plead to the Court and in your discovery responses, a claim for selective enforcement is established in part by showing that the initiation of an investigation, the levying of charges, or the imposition of sanctions was selectively enforced. I am unable to find "comparators" to prove this claim without source documents and the ability to question the university decisionmakers (Dean Reber, the sole decisionmaker regarding the decision to initiate an investigation, and Dr. Harrell, whose office is the sole decisionmaker regarding the decision to levy

charges) on these decisions when a possible comparator is found. **Please confirm that, despite my clarification and offer of additional protections (<u>which you did not address</u>), that you intend to continue refusing to produce the source documents. If so, this is absolutely an issue that must go to the Court because it is obvious that these documents are necessary for my client's claims.**

I offer an additional limitation to RFP 36, seeking the investigation reports (in addition to the date limitations we have already established and your self-imposed limitation for only female comparators). This does not waive our ability to later seek other reports, but, for now, I limit this request to seek only the investigation reports that resulted in **no charges levied against the respondent/accused student.** Please let me know if this is an agreeable compromise for RFP 36.

Ex. H.

Rather than produce any responsive set of documents, Defendant's counsel has continued to refuse Plaintiff's requests unless Plaintiff would agree to allow Defendant's counsel to select and produce only student records that Defendant's counsel believes constitutes comparator evidence for student sanctions, as in the excerpts of the following long and winding email from Defendant's counsel:

| | |
|---|---|
| **From:** | Moreno, Cristina |
| **To:** | Gaines West |
| **Cc:** | Luna, Rosalinda; Jay Rudinger; Cheyenne Pate; Kyle Carney; Billy Hart; Email Server; Daaboul, Rola |
| **Subject:** | RE: Response to your 12/11/2020 email |
| **Date:** | Tuesday, December 15, 2020 12:03:01 PM |
| **Attachments:** | image001.png |
| | 20201203_D"s Resp to 2RFP.pdf |

Gaines-

I'm sorry you still seem so frustrated with the discovery. I will do my best to answer your questions and clarify some of the issues.

. . . .

In the fifth paragraph of your email, you claim that I did not address the protections you offered to make for the "source documents". In your letter to me, you asked if we could provide you with unredacted versions of the documents pertaining to complaints and investigation reports pursuant to a protective order.  In response to this offer, I wrote in my 12/11 email: *We appreciate your offer to treat these documents with confidentiality, and if there is a narrower subset of documents at issue*

*we may be able to work with you regarding redactions or production pursuant to a protective order. However, at this time, we are not willing to produce unredacted versions for hundreds of complaints and investigations involving other students because, as we detailed in our response to RFPs 31, 32, and 36 such a request is not narrowly tailored in scope to the subject of this litigation as required by Rule 26(b)(1).*

  ○ I must repeat that we are not willing to provided unredacted versions of hundreds of complaints and investigation reports detailing accusations of sexual misconduct involving current and former students at TAMU. These complaints involve thousands of individuals, and involve details of the most intimate nature. These documents are not relevant to the claims raised by this lawsuit for the reasons outlined in our objections.

    ○ If there is a smaller subset of complaints you seek, please identify them, and perhaps we can work with you on a smaller request where redactions might be an option.

Ex. G. Defendant's counsel ignores both the proper scope of discovery for Plaintiff's claims, which includes discriminatory sanctions—and charges and investigations—and which allows Plaintiff to investigate the categories of documents reasonably calculated to lead to admissible evidence (i.e., not that Defendant be allowed to cherry pick and self-select the universe of comparators). Defendant's counsel appears to be attempting to prevent Plaintiff from reviewing male students and engaging in any substantive comparative analysis with female students. Moreover,

Defendant's counsel continues to ignore Plaintiff's offer to enter into a protective order, expressly indicating that she and Defendant "are not willing to provide[]" these source documents related to student complaints and Defendant's investigations into those complaints.

Plaintiff has continued to follow up through the present date, hoping that Defendant's counsel might respond more positively after she refused to communicate at all until after a two week vacation—despite ongoing requests that Plaintiff had attempted for weeks and months. However, Defendant has insisted on an impasse, as shown in the following email thread:

| | |
|---|---|
| **From:** | Gaines West |
| **To:** | Moreno, Cristina |
| **Cc:** | Luna, Rosalinda; Daaboul, Rola; Billy Hart; Kyle Carney |
| **Subject:** | Re: Van Overdam v. TAMU |
| **Date:** | Tuesday, January 5, 2021 11:19:01 AM |

Cristina, I hope you enjoyed your long holiday break. Before your break - and literally months before your break - we asked you to produce the source documents for student complaints made to your clients. Those documents are directly relevant to my client's claim that A&M treated female complainants as more worthy of prosecution, and more believable, than complaints made against female students. The scope of my request is proper - it is calculated to lead to the discovery of the evidence just mentioned - that your client has a bias in deciding to investigate and charge male respondent students, and that A&M does not take such a hardline zealous approach to investigating, charging and then finding female respondents responsible for wrongdoing. It is clear that you have neither a valid FERPA objection, nor a burden associated with producing the documents given that I have offered to enter into a protective order. Besides, we have already treated confidentially the unredacted documents that your office already accidentally produced. Additionally, there exists no valid legal basis for withholding the passwords and codes - which I specifically requested - to unlock the spreadsheets created by your client. I must have this information BEFORE any further depositions can take place so that I can prepare to question your clients AT their depositions. How am I supposed to depose your client's employees about the way they decided to investigate and charge {or not charge} female and male students unless I have the complaints that the deponents would have been reviewing? You have already admitted that A&M has these documents in its possession. I can only conclude that you are just stalling to avoid producing them - ultimately frustrating the discovery process and further impeding my clients ability to prepare for trial in this matter.

Please simply respond whether you are going to produce the source documents for student complaints, and whether you will produce passwords to unlock the spreadsheets. If you will not comply with this patently reasonable requirement, considering the FRCP and current caselaw, I must presume by your unresponsiveness over these past two weeks, to similar requests made by me for this same information before your self declared holiday, that you have no intention of getting me the information. I will wait however, until the end of today to get your answer. If you do decided to respond, but do it with the same obfuscating responses that you have attempted in the past, I will simply file my Motion to Compel. I can no longer wait on you to do what you should have already done months ago.

Please consider this communication as my attempt to confer on my Motion to Compel. Unless I hear from you to the contrary, I will indicate that you are opposed to it. Gaines



**Gaines West • Partner**
West, Webb,

Austin
Office:

Ex. J.

In spite of Plaintiff's persistent and ongoing attempts to move discovery along outside of court supervision, Defendant has continued to lodge baseless objections and engage in misdirection that waste the time and resources of everyone involved in this matter. (For example, see the entire thread in Exhibit J.) Defendant has complained that the scope of Plaintiff's requests are too broad—despite the fact that Plaintiff allowed Defendant to limit the scope of the requests to a smaller date range and to female comparators[10]—and argued that Plaintiff should only be able to obtain source documents for identical comparators as judged by Defendant alone. However, Defendant ignores both the correct standard for the scope of discovery, which is broad and requires production of documents calculated to lead to the discovery of admissible evidence—i.e., Plaintiff is supposed to receive broad discovery and analyze it for comparators; Defendant is not supposed to be able to 'cherry pick' which records Plaintiff gets to review. And, more importantly, Defendant ignores that Plaintiff's claims target the decision-making process with respect to the investigation and charging functions performed by Defendant's employees.

Defendant possesses these requested documents concerning student complaints and the decision to investigate or charge and accused student, and Defendant has no factual or legal basis for withholding them from Plaintiff.

## 2. *Defendant has no special burden associated with this production, and the requests are proportional to the needs of the case.*

Defendant has claimed a heavy redaction burden to protect student confidentiality under Federal Educational Rights and Privacy Act of 1974 ("FERPA"), but Defendant's FERPA objection is invalid in a civil action and is moot because Plaintiff offered to enter into a protective

---

[10] *E.g.*, Ex. H; Ex. J; *see also, e.g.,* Ex. R (arguing, in response to Request for Production No. 31, that Plaintiff is only entitled to discovery of direct comparator evidence).

order to satisfy any FERPA problem that Defendant might be worried about. Inexplicably, Defendant still refused to produce the requested documents.

As demonstrated above, student complaints are directly relevant to a Title IX selective enforcement claim for a university's discrimination in the decision to investigate or charge a student for misconduct. *See Klocke*, 938 F.3d at 213; *Yusuf*, 35 F.3d at 715-16. And the Federal Educational Rights and Privacy Act of 1974 ("FERPA") creates no barrier to discovery in this matter."By its plain terms, FERPA does not create an evidentiary privilege, and the Court agrees with prior decisions holding that documents covered by FERPA are indeed discoverable in the context of a civil action." *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005) (Sparks, J.).

Plaintiff has already treated some unredacted documents produced by Defendant with confidentiality and offered to do so going forward. Moreover, Plaintiff offered to enter into a protective order with Defendant to satisfy any FERPA issues. *See* 20 U.S.C. § 1232g; 34 C.F.R. § 99.31(a)(9)(ii). Instead of cooperating with Plaintiff, Defendant's counsel has refused to produce documents, arguing that it would create too much of a redaction burden unless she is allowed to handpick the documents she believes would be admissible at trial. But, again, that is the incorrect discovery standard, and the entry of a protective order would completely alleviate Defendant's redaction burden and shift these burdens to Plaintiff. Because Plaintiff has requested relevant documents in Defendant's possession and has offered to allow a limited production in time and under a protective order—but Defendant has refused—the Court should compel Defendant to produce the requested student complaints, investigation notes, and charging notes—in compliance with FERPA—for the entire requested date range from 2011 through 2018.

Plaintiff has already attempted to allow Defendant to produce a limited set of documents for a narrower date range from 2014 through 2018, but Defendant has failed to cooperate even under those terms. Now, Defendant continues to seek limitation of its responses, attempting to limit responsive documents only to direct comparator evidence, as unilaterally determined by her. *E.g.*, Exhibit H (opposing counsel asking, "Would you like me to provide you with an excerpt of the spreadsheets produced in response to RFP 31 and 32 that limits the data to only those cases where a female was accused of sexual misconduct?"). Ultimately, however, Defendant has no valid reason to withhold documents and information in the 2011-2014 time period, particularly given that Dean Anne Reber was working in the same or similar position—as a key decision maker— within that relevant time frame. *See* Ex. F (showing Reber employed in her position since 2010).

There are two glaring holes in Defendant's objections. First, Defendant has repeatedly relied on *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019) as a source of authority governing the selective enforcement claim, and the *Klocke* case itself analyzes both comparators and *systemic* discrimination statistical evidence—which makes all categories of student sexual misconduct, i.e., systemic discrimination, relevant to Plaintiff's claims. Plaintiff has reminded Defendant of this on numerous occasions, including in pleadings before the Court, meeting his burden to show relevance, but has received no response from Defendant, who continues to rely on boilerplate objections of scope and relevance.

Second, Plaintiff's selective enforcement claim targets Defendant's *decisions to investigate and charge* students, which encompass a broader class of students than those who were found responsible and ultimately sanctioned, or not, for particular school code violations. Defendant's decision to investigate and charge students based on student complaints implicates a broader set of student cases because, ostensibly, Defendant should be making these decisions based on

15

objective, generally applicable criteria that would apply evenly across various sexual misconduct complaints regardless of any student's sex. Moreover, the proper scope of discovery allows Plaintiff to obtain a broad scope of the requested documents to that Plaintiff may review them for potential comparators. Plaintiff has already provided the Court with one direct comparator with regard to sanctions imposed, and Plaintiff has the right to search for others and to review Defendant's documents to evaluate Defendant's investigation and charging practices. As a result, the scope of relevant documents is larger than Defendant would claim, and the scope of discoverable documents is even greater.

Previously, Defendant relied heavily on the Protective Order, Dkt. 76, regarding the deposition requested for president Michael Young to severely limit its production of relevant discovery.  The Protective Order appeared to impliedly limit the selective enforcement claim to only a few months in which Plaintiff was charged and sanctioned.  However, the Court later confirmed that this was not its intent, holding that the Protective Order "does not foreclose other evidence relating to events that occurred outside of the time period during which Plaintiff was being investigated, as long as that evidence is relevant to the claim at hand."  Dkt. 81.  Shortly thereafter, Defendant began 'reassuring' Plaintiff that a significant production of information was forthcoming.  *See* Exhibit E.  Plaintiff checked on the status of this forthcoming discovery on May 26 and 31, June 28, August 17, September 4, and finally on October 2.  *Id*.  However, Defendant failed to produce responsive discovery prior to the depositions. *See* Plaintiff's First Amended Interrogatories, at Interrogatory No. 10, attached as Exhibit C; Plaintiff's First Amended Requests for Production, at Request Nos. 10, 14, 17, attached as Exhibit D; *see also* Exhibit B (email to Ms. Moreno identifying which requests sought information regarding complaints).  Plaintiff proceeded with the depositions, unaware of several key facts concealed or otherwise not disclosed by

16

Defendant, including that Dr. Harrell had created the spreadsheets produced by Defendant only days before the first deposition. As soon as Plaintiff became aware of the scope of Defendant's misconduct, it sought to resolve these issues numerous times before ultimately bringing the issue to the Court today. *E.g.*, Exs. G, H, I, J, and K (providing numerous email and letter correspondence attempts to reach a consensus since August of 2020, including October 9, November 5, December 14, December 17, as well as January 5 and 6, 2020).

Defendant, relying on the *Yusuf* case, has repeatedly claimed that the "only question" is whether Defendant "*initiated its investigation* or punished Plaintiff" based on gender, and now Defendant refuses to produce, or is otherwise delaying the production of, information regarding the complaints of sexual misconduct lodged by students with Defendant. However, it cannot be disputed that the decision to initiate an investigation must start with a complaint. It is implausible to think that there are documents that are in Defendant's possession related only to sanctions but not investigations or complaints, and, indeed, Defendant's witnesses confirmed that the investigation reports compiled by Defendant prior to charging students with sexual misconduct usually contain the complaint itself. *See* Ex. B (emails discussing same); *see also e.g.*, Ex. L at 247:19-22 (Reber admitting in deposition that Defendant's training presentations indicate that Defendant possesses statistical data of the nature requested by Plaintiff). Importantly, there is no question that Defendant is in possession of the information sought by Plaintiff and that it is relevant to Plaintiff's claim, which Defendant admits, and Defendant has admitted that it has either gathered or identified responsive documents. *See id.*; *see also* Exhibit M at 55:20-56:25 (noting that complaints are received in hard copy by investigators); Exhibit N at 94:3-13; 127:1-16; 205:3-11 (noting that complaints are retained electronically and gender of complainant is recorded).

Even so, it is clear that Defendant intends to operate outside the bounds of the Federal Rules of Civil Procedure, instruction from this Court, and the agreement of the Parties, and will require an order from this Court compelling production of this relevant information.  Plaintiff therefore requests that this Court compel Defendant to produce evidence responsive to Plaintiff's discovery requests seeking information regarding the complaints and investigations as soon as possible so that depositions may resume.

### 3.   Defendant must produce requested codes and passwords to make spreadsheets usable.

Instead of cooperating with Plaintiff and producing the requested source documents for student complaints, Defendant created spreadsheets with entries numbering in the thousands but produced them in a locked format, despite Plaintiff's request to produce such documents "together with the codes and/or programming instructions and other materials necessary to understand and use such systems." Ex. D at 3 ¶ 8; Ex. E at 3 ¶ 8. However, to reasonably use the spreadsheets to sort data and actually use the spreadsheets to conduct efficient cross-examination during depositions, Plaintiff would need the password and instructions to unlock the spreadsheets. Defendant's counsel refuses to produce the password on the purported basis that she is not allowed to use the spreadsheets.

Rule 34 of the Federal Rules of Civil Procedure provides that the requestor "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Additionally, at minimum, Rule 34 requires that electronic documents be produced "as they are kept in the usual course of business" and in "a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii); *see A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 899 n.2 (S.D. Tex. 2015) (citing same).

For example, in one recent case, the defendant "produced a 2,269-page document that appear[ed] to be a spreadsheet converted into a static PDF, with significant redactions obscuring

sales information." *Corker v. Wholesale*, C19-0290RSL, 2020 WL 1987060, at *1 (W.D. Wash. Apr. 27, 2020). There, the court rightly concluded that the defendant's "production was plainly insufficient under the rule: the summaries were not in the form in which the information was ordinarily maintained, nor did it have the functionality of the native format that made it so valuable for business purposes and which would enable plaintiffs to use the information efficiently." *Id.* Critically, the court explained, "[e]ven if the PDF images of the spreadsheet pages are 'readable' and 'searchable' (Dkt. # 211 at 4), they cannot be sorted or filtered as the original spreadsheet could be." *Id.* "Thus, they are likely not in a 'reasonably usable form' for purposes of Rule 34(b)(2)(E)." *Id.*

A similar problem is happening with Defendant's counsel in this case. In each set of requests for production of documents, Plaintiff requested that Defendant produce electronically stored information ("ESI") "together with the codes and/or programming instructions and other materials necessary to understand and use" the ESI. Ex. D; Ex. E. However, much like the *Corker* defendant, Defendant's counsel has refused to cooperate and attempted to frustrate and impede discovery and depositions further by withholding the information necessary to use the ESI.

Every time that Plaintiff has requested the password to unlock the Excel spreadsheets, Defendant's counsel responds that she is not allowed—without noting any particular authority— to provide the Excel spreadsheets in unlocked format. At times, Defendant's counsel has argued that Plaintiff's counsel cannot be trusted not alter the data in the spreadsheets, and, at other times, Defendant's counsel has completely denied the existence of thousands of entries in the spreadsheet.[11] But in fact, if one attempts to search for the letter "F" (which appears to represent the sex of the students noted in the spreadsheets), the spreadsheet renders thousands of results. For

---

[11] Cite email from Moreno denying thousands of entries and pointing to smaller spreadsheets.

example, see the below screenshot of the spreadsheet rending 4753 search results, only some of which actually correspond to a data entry that could be useful in any manner whatsoever:



Ex. P (displaying screenshot of Defendant's Title IX database spreadsheets, which are locked so that the information cannot be filtered and produces unwieldly search results—e.g., 4753 entries, some of which are female students and others of which refer only to random words containing the letter F—in the format provided by Defendant's counsel). The full static form of the spreadsheets is attached as Exhibit Q, but presenting this document in a readable, reasonably viewable form is virtually impossible without the requested passwords to unlock the spreadsheet.

Ultimately, Plaintiff's counsel must be able to use the spreadsheets to question witnesses in depositions (and later at trial), but Defendant is attempting to impede Plaintiff from using the spreadsheet in a manner that would allow for either the preparation for such questions or the efficient use of time during cross-examination. Somewhat ironically, Defendant's counsel has previously objected to the use of large exhibits during depositions. *See* Ex. O (email containing Defendant's counsel's objection to the size of documents offered for deposition exhibits). However, as can be gleaned from Defendant's objections on the issue of these spreadsheets,

Defendant's counsel has shown that her only true principle is obstruction. Defendant's counsel would rather Plaintiff's counsel have to use valuable deposition and trial time scrolling through its unmanageable format, despite the fact that Defendant has the password to unlock the spreadsheets and no valid reason to withhold the password.

To comply with Rule 34, Defendant should be compelled to produce the passwords to make the spreadsheets usable. This remedy is sought to give Plaintiff the opportunity to analyze Defendant's ESI and to make deposition and trial testimony more efficient. In the event there were some hypothetical reason to withhold the requested ESI, the Court should, alternatively, compel Defendant's to answer Interrogatory Number 3[12]—which requests Defendant to provide statistical data concerning the information sought. Defendant has no valid objection to these discovery requests, and Defendant's own training documents indicate that Defendant actually possess such data.[13]

## C. Sanctions are warranted here.

Rule 30 enables a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."   FED. R. CIV. P. 30(d)(2).   "'The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule.'"  *Nieman v. Hale*, 2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014) (quoting *Howell v. Avante Servs., LLC*, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) ).  Rule 37 further enables a court to compel discovery when a party has failed to properly respond pursuant to Federal Rules of Civil Procedure 33 and 34.  *See* FED.

---

[12] Ex. C.
[13] Ex. L at 247:19-22 (Reber admitting in deposition that Defendant's training presentations indicate that Defendant possesses statistical data of the nature requested by Plaintiff).

R. CIV. P. 37(a)(3)(B)(iii)-(iv).  In addition, where a court grants a motion to compel discovery, Rule 37(a)(5) mandates the award of fees and expenses to the movant, unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37 (a)(5)(A).

Discovery in this matter has been ongoing for over ten months, and, to date, Plaintiff has received next to nothing of the requested source documents related to investigating and charging students—which is a key element of Plaintiff's selective enforcement claim. The initial assurances of Defendant led Plaintiff to believe that responsive discovery would be provided without needing Court intervention, but the repeated delays and disingenuous promises over the last ten months have confirmed that Defendant requires a Court order to obey the Rules.  Moreover, Plaintiff also hoped that certain important discovery would be obtained through the fact witnesses identified by Defendant, only to be effectively blocked from obtaining this testimony by the bizarre and countless objections lodged by counsel for Defendant.  There can be no question that counsel impeded, delayed, and frustrated the fair examination of these witnesses.  Defendant's conduct is unacceptable and should be sanctioned to prevent further abuses of the discovery process.

For these reasons, Plaintiff requests that the Court compel Defendant to produce the discovery identified herein prior to the reopening of these depositions.  Finally, Plaintiff asks that the Court award Plaintiff his attorney's fees and costs for filing this Motion to Compel.

## V.     CONCLUSION

Accordingly, for the reasons cited herein, Plaintiff Austin Van Overdam respectfully requests that the Court compel Defendant Texas A&M University to provide the information responsive to Plaintiff's discovery requests set forth herein.  Specifically, the Court should compel the production of all Defendant's documents containing or constituting the following:

- Student complaints about sexual misconduct;
- Defendant's internal reports and communications related to student complaints;
- Defendant's documents and communications related to the decisions to (a) investigate and (b) charge a student;
- Codes or passwords necessary to unlock Defendant's spreadsheets containing data related to Title IX investigations and proceedings;
- Defendant's documents and data available since 2011, which is the time when Defendant began investigating and prosecuting sexual misconduct complaints after the "Dear Colleague Letter"[14]

Additionally, or in the alternative if the Court were to deny the above requests, Defendant's counsel should be compelled to answer Interrogatory Number 3 and compile and provide Defendant's statistical information.

Furthermore, Plaintiff requests that the Court extend his deadline to designate an expert witness, particularly in light of Defendant's counsel's obstruction of information and documents that would facilitate analysis by an expert in the fields of either statistics or higher education.

Furthermore, Plaintiff prays that the Court award him his attorney's fees and costs—against either Defendant or Defendant's counsel—for the filing of this Motion to Compel.

Plaintiff also requests other relief, at law or in equity, to which he may be entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone:  (979) 694-7000
Facsimile:   (979) 694-8000

By:   /s/ Gaines West
     GAINES WEST
     State Bar No. 21197500 / SDTX No. 5327

---

[14] Defendant previously limited production to a narrower date range, from about 2014-2018, but gave no reason for omitting the 2011-2014 documents available—despite the fact that we now know that Dean Anne Reber has been a key decision maker in the charging and investigation process since 2010. While Plaintiff attempted to work with Defendant within the narrower range, Defendant's obstruction has forced Plaintiff to seek relief from the Court and, therefore, Plaintiff now asks for the Court to order production of all documents within the requested date range—between 2011 and 2018.

Email:  gaines.west@westwebblaw.com
JOHN "JAY" RUDINGER, JR.
State Bar No. 24067852 / SDTX No. 1421393
Email: jay.rudinger@westwebblaw.com
KYLE CARNEY
State Bar No. 24096789 / SDTX No. 3362881
Email ~ kyle.carney@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that in 2020, Plaintiff attempted numerous times over the past several months—including August 17, September 4, and October 2, October 9, November 5, December 14, December 17, and December 18—to confer with Defendant's counsel about the merits of this motion and the discovery requested herein. Then after Defendant's counsel insisted that she would not continue discussion until January 5—despite months of attempts to get the requested documents that are the subject of this motion—Plaintiff's counsel gave it one more try through further email communication on January 5 and January 6, 2021, to get Defendant's counsel to enter a protective order and arrange for production of the requested documents and passwords in a manner that would be beneficial for all parties. However, Defendant's counsel has refused to cooperate and has noted that she opposes these requests. The Parties were unable to reach an accord regarding this relief, which makes this motion necessary.

*/s/ Gaines West*_____
GAINES WEST

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on January 7, 2021, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

*/s/ Gaines West*_____
GAINES WEST

24