UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § § § | |
| *Plaintiff,* | § § | **CASE NO. 4:18-CV-02011** |
| v. | § § | |
| **TEXAS A&M UNIVERSITY,** | § § § | |
| *Defendant,* | § | |

---

### PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL

---

COMES NOW Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and files this Reply in Support of Emergency Motion to Compel. Plaintiff shows as follows:

Plaintiff sued Defendant Texas A&M University ("Defendant") under Title IX for Defendant's decisions to investigate, charge, and punish Plaintiff because he is male. To prove his claim, Plaintiff has requested production of the following documents:

- Student complaints about sexual misconduct;[1]
- Defendant's internal reports and communications related to student complaints;[2]
- Defendant's documents and communications related to the decisions to (a) investigate and (b) charge a student;[3]

---

[1] Doc. 103-1, Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19; Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 33, and 35. Plaintiff initially sought these documents in his First Requests for Production. *E.g.*, Ex. D. No. 19 ("All documents . . . that were presented to Texas A&M's students, employees, faculty, representatives, and/or agents since 2011 that address issues, **complaints, investigations**, and/or policies relating to sex discrimination, sex harassment, or applicable standards and laws."). Defendant's only objection to this request was that it was too broad for it to understand, *see* Doc. 103-1 at 239-40, but when Plaintiff specified that this request included student complaints and related documents, Defendant still failed to provide responsive documents. To avoid unnecessary squabbles, Plaintiff attempted to work with Defendant by providing Plaintiff's Second Requests for Production. But Defendant has still refused to produce documents responsive to these requests.

[2] Doc. 103-1, Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19; Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 32, 33, 34, 35, 36, 37, 38, 39 and 40.

[3] *Id.*

1

- Codes or passwords necessary to unlock Defendant's spreadsheets containing data related to Title IX investigations and proceedings;[4]
- Defendant's documents and data available since 2011, which is the time when Defendant began investigating and prosecuting sexual misconduct complaints after the "Dear Colleague Letter"[5]

These documents are necessary so that Plaintiff may examine the remaining deponents regarding their treatment of male versus female students at the investigation, charging, and punishment phases of Defendant's Title IX process. To date, despite multiple requests and attempts to work under a narrower scope, Plaintiff has received ***none*** of these listed items regarding student complaints and investigations.

**A. Defendant must produce the requested source documents for all student complaints of sexual misconduct and the related investigations.**

The available evidence already shows that Defendant punished Plaintiff more harshly than females who were found responsible for similar charges. This is not surprising given that, from the top down, Defendant trained its employees to view males as potential threats and females as victims, even going so far as to provide disparate sexual assault prevention training based on sex (i.e., females received a how-to-avoid-rape training and males received a don't-rape traininig). Additionally—and particularly relevant here—Defendant's employee Dean Anne Reber served as the sole decisionmaker with respect to whether Defendant would investigate a student complaint.[6]

---

[4] Doc. 103-1, Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19 (encompassed by instructions provided on Page 3); Ex. E, Plaintiff's Second Requests for Production, at Request Nos. 31, 33, and 35 (same).

[5] Doc. 103-1, Ex. D, Plaintiff's First Requests for Production, at Request Nos. 14, 17, and 19. Defendant previously limited production to a narrower date range, from about 2014-2018, but gave no reason for omitting the 2011-2014 documents available—particularly since Dean Anne Reber, the same individual making investigation and charging decisions at the time of Plaintiff's discipline, was working in the same or similar capacity in 2011. Ex. F. While Plaintiff attempted to work with Defendant within that range, Defendant's obstruction has forced Plaintiff to seek relief from the Court and, therefore, Plaintiff now asks for the Court to order production of all documents within the requested date range—between 2011 and 2018.

[6] Doc. 103-1, Exhibit M at 55:20-56:25; Exhibit N at 94:3-13; 127:1-16; *see also* Doc. 94-4 at 26-27 (highlighting relevant excerpts).

Because Dean Reber acted as the sole decisionmaker regarding Defendant's investigation process, the student complaints (i.e. the requested source documents) are particularly relevant to Plaintiff's claims. Plaintiff needs the source documents to question Dean Reber, as well other witnesses, both in deposition and at trial, regarding the decisions to investigate and charge students for sexual misconduct violations. The source documents for student complaints will enable Plaintiff to question Dean Reber regarding her methods and criteria for determining whether any particular complaint is worthy of investigation or charges.

Defendant has not shown any burden associated with production by way of affidavit or other evidence. Therefore, that objection is waived.

Defendant's only objection to production of these source documents is that the request is not limited to direct comparator evidence.[7] But Defendant has repeatedly relied on *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019) as a source of authority governing the selective enforcement claim, and the *Klocke* case itself analyzes both comparators and *systemic* discrimination statistical evidence—which makes all categories of student sexual misconduct, i.e., systemic discrimination, relevant to Plaintiff's Title IX claim.

In any event, Defendant's objection to scope is waived because Defendant produced spreadsheets containing information related to each of the requested documents. "There is no middle ground entitling her to produce some documents and withhold others, depending on her *ex parte* determination of relevancy." *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 648

---

[7] Defendant claims that Plaintiff did not respond to an offer—made late in December 2020—to produce source documents related to female students. However, Plaintiff communicated that he was not opposed to such production at least as an initial matter. *See* Doc. 103-1 at 78 ("Moreover, we have never objected to your self-limiting of these requests to only female comparators accused of 'sexual misconduct' similar in nature to what Plaintiff was accused of."). Still no documents have been produced, and Defendant's later attempts to posture offers to finally produce something by some undisclosed dated beyond January 4, 2021, must be regarded as mere attempts to posture for this motion while simultaneously eating Plaintiff's discovery time. Ultimately, Plaintiff has none of the requested documents and was forced to seek relief from this Court due to Defendant's efforts to impede discovery and the remaining depositions.

(N.D. Ind. 1991). Because Defendant admits that responsive documents exist and has produced other documents in the same category, Defendant has waived its objection to producing the remaining documents.

Moreover, Defendant's review process—i.e., what seems to be largely comprised of Dean Reber's ad hoc determinations—has been highlighted as an area of concern by Defendant's own consultants.[8] Defendant would prefer Plaintiff be forced to prove his case with only spreadsheets of piecemeal data prepared and authored by Defendant so that its witnesses cannot be cross-examined on any factual context. But Plaintiff has the right to cross-examine Dean Anne Reber on her methods and criteria for determining which student complaints are investigated and which students are charged with sexual misconduct. To that end, in the last attempt to conference for this motion to compel, the undersigned counsel asked opposing counsel:

> How am I supposed to depose your client's employees about the way they decided to investigate and charge {or not charge} female and male students unless I have the complaints that the deponents would have been reviewing?

Doc. 103-1 at 90. Defendant's counsel has not answered this basic question, but its practical importance for both depositions and trial is manifest. For example, if Dean Reber is allowed to explain her reasoning for dismissing a male student complaint against a female student, then Plaintiff should be allowed to challenge Dean Reber's explanation by comparing the consistency of her answer not only with Plaintiff's case but also with her application of a principle in other cases. In other words, cases involving other male students may be used to scrutinize and rebut explanations offered by Dean Reber concerning cases involving only direct comparators.

---

[8] *E.g.*, Husch Blackwell, Higher Education Group, Review of Texas A&M University's Title IX-Related Policies, at 12 (August 2018) ("[I]t is unclear from Student Rule 47 how cases move from investigation to charge. We recommend clarifying how cases move from the Investigative Authority to the Student Conduct Administrator."), https://bloximages.chicago2.vip.townnews.com/theeagle.com/content/tncms/assets/v3/editorial/e/a8/ea89cc74-a4ac-11e8-b98b-9b6eba50a349/5b7b12a555ab9.pdf.pdf.

Additionally, evidence of prior bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Plaintiff's Title IX claim not only targets Defendant's harsher sanctions but also Defendant's default (i.e., *modus operandi* and intent) to believe the female accuser over the male accused. Thus, evidence of systemic bias and routine discrimination against male students is admissible to show that Defendant acted according to its *modus operandi* and intent in automatically believing the female accuser and viewing Plaintiff as a threat in Defendant's investigation, charging, and sanctioning processes.

As a result, Defendant must be compelled to produce all responsive documents.

## B. Defendant must either produce the password to unlock the spreadsheets or produce a separate unlocked spreadheet.

Defendant has failed to identify any legal basis for withholding the password needed to unlock the spreadsheet so that Plaintiff may engage in efficient analysis of the data and prepare for the examination of witnesses. Thus, Defendant's objection should be considered waived for failure to adequately brief the issue.

To the extent Defendant's objection is not waived, it should be noted that Defendant's only argument is based on Defendant's fear that data in a cell might accidentally be altered. Again, there is no legal basis for this argument. Additionally, Defendant could easily alay its own concern by marking the locked spreadsheet with an identifier and providing Plaintiff with the unlocked spreadsheet for analysis and preparation of demonstrative exhibits. During testimony, Defendant's witnesses could verify the information on Plaintiff's unlocked spreadsheet by referring to Defendant's own locked spreadsheet.[9] Moreover, an unlocked spreadsheet would allow Plaintiff's

---

[9] It must be noted that Defendant's concern over producing the spreadsheet highlights the evidentiary need for source documents. Ultimately, while unlocked spreadsheets would present a good initial reference point, Defendant's

5

expert witness to efficiently sort through the data and allow Plaintiff to prepare to examine witnesses efficiently.

Defendant has no sound reason for refusing Plaintiff's request other than it serves Defendant's goals of frustrating discovery and making litigation as expensive for Plaintiff as possible. Plaintiff attempted multiple times over several months to obtain cooperation from Defendant, but those efforts failed. Accordingly, Defendant must be compelled to produce the password to unlock the spreadsheets or to produce an unlocked version of the spreadsheet.

**C. Discovery should be extended and sanctions should be imposed for the obstruction to discovery.**

Plaintiff has sought the requested discovery for months, including much of it in the previous motion to compel heard last year.[10] However, citing no legal basis for withholding the requested passwords for the spreadsheets and—late in December 2020—unilaterally conditioning any compliance with requests for source documents on the narrowest possible terms—at an undisclosed time after opposing counsel's return from a two-week vacation in which she refused to even engage in email correspondence—Defendant has sought to impede Plaintiff's ability to prepare for depositions by withholding the requested discovery.[11] This holds true to the pattern Defendant has engaged in over the past several months of making promises and then breaking them so that Plaintiff loses time to prepare his case.[12] By refusing to either unlock the spreadsheets

---

argument highlights its concern that its witnesses may not be knowledgeable enough to testify about specific facts contained in the spreadsheets without source documents for verification purposes.

[10] *See* Doc. 94 at 7-12.
[11] Doc. 103-1 at 34.
[12] See Doc. 103-1 at 88 ("Cristina, you are correct, I have litigated with A&M, and other state schools like UT, Texas Tech and others, over the past 30 plus years. I am accustomed to the General Counsel offices at those institutions being closed during holidays, but I have not had the experience of an Asst. AG being totally unavailable during those holiday breaks. Your unwillingness to answer me or, engage at all over the past two weeks – not even over email – after literally months {since last August} of asking you for these specific items, amounts to nothing more than your willingness to go to any end to frustrate and impede my client's ability to obtain discovery. You now push for deposition dates but refuse to give me documents my client is entitled to get – effectively blocking my ability to complete these depositions.")

or produce the source documents for student complaints and investigations, Defendant is effectively frustrating and impeding Plaintiff from being able to perform expert analysis on the data and from preparing for examination of witnesses during depositions and, eventually, trial.

As explained above, Plaintiff is entitled to cross-examine Dean Reber and investigators using the source documents. The source documents will allow Plaintiff to explore Defendant's methods and criteria used to investigate, charge, and punish students. Additionally, Plaintiff will be able to use the source documents to prove that the prior bad acts of Defendant show its intent and default mode against male accused students. Further, the source documents will allow Plaintiff to probe Dean Reber for any proffered explanations for why she chose to pursue Plaintiff's case but not others. Similarly, Plaintiff is entitled to the passwords to unlock the spreadsheets for analysis and efficient examination of witnesses, but Defendant has unreasonably impeded Plaintiff's multiple attempts to obtain these straightforward discovery requests.

Discovery in this case should be simple. Even if the Court were to take up Plaintiff's Motion for Reconsideration[13] and allow Plaintiff to proceed with his other theories of Title IX liability as one statutory claim, discovery would largely overlap given that every Title IX theory in this case deals with Defendant's treatment of males versus females within its disciplinary process. The primary substantive shift would be that Defendant's counsel would have to withdraw her objections to the scope of Plaintiff's inquiries and reconsider her unilateral *ex parte* determinations about the relevance of requested documents.

However, counsel for Defendant has refused to allow this process to be simple. Over the past several months, Defendant has pushed well beyond the bounds of reasonable disagreement with unjustified objections and multiple failures to respond to discovery requests, and this conduct

---

[13] Doc. 91.

has impeded, delayed, and frustrated Plaintiff's ability to obtain an expert report and to timely be able to complete the remaining depositions. *See* Fed. R. Civ. P. 37(a). Plaintiff has treated Defendant's inadvertent disclosures with confidentiality and Plaintiff has offered to enter into a protective order to completely eliminate any redaction burden that Defendant would have had. Rather than pursue the simple path in discovery proposed by Plaintiff, counsel for Defendant insists upon time consuming and expensive procedures that burden and challenge the financial ability of Plaintiff to pursue this lawsuit.

The current deadline for discovery is February 22, 2021,[14] and because Defendant's counsel has refused to provide Plaintiff the discovery that he has sought for months, Plaintiff cannot feasibly complete discovery by the February 22 deadline after the hearing on this motion that is currently scheduled for January 27. At least five depositions are remaining, and Plaintiff would need time to analyze the source documents and prepare them for depositions. Moreover, Plaintiff needs additional time to allow an expert to analyze the requested additional discovery once it is finally produced. The conduct of Defendant's counsel has frustrated Plaintiff's ability to obtain discovery within the current deadlines under the Docket Control Order and has made completion of discovery impracticable. As a result, sanctions are warranted, and Plaintiff should be awarded his attorney fees for the preparation of this motion to compel and awarded a three-month extension of the deadlines to designate an expert witness and complete discovery under an amended scheduling order that would extend the deadline for dispositive motions and set a new trial date.

---

[14] Doc. 90.

## CONCLUSION

For these reasons, Plaintiff Austin Van Overdam respectfully requests that the Court grant his Emergency Motion to Compel. Additionally, Plaintiff requests other relief, at law or in equity, to which he may be entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone:  (979) 694-7000
Facsimile:   (979) 694-8000

By:  */s/ Gaines West*
  GAINES WEST
  State Bar No. 21197500 / SDTX No. 5327
  Email:  gaines.west@westwebblaw.com
  JOHN "JAY" RUDINGER, JR.
  State Bar No. 24067852 / SDTX No. 1421393
  Email: jay.rudinger@westwebblaw.com
  KYLE CARNEY
  State Bar No. 24096789 / SDTX No. 3362881
  Email ~ kyle.carney@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on January 20, 2021, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

*/s/ Gaines West*
GAINES WEST