# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN VAN OVERDAM,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CASE NO. 4:18-CV-02011** |
| | § | |
| **TEXAS A&M UNIVERSITY,** | § | |
| *Defendant.* | § | |

## PLAINTIFF AUSTIN VAN OVERDAM'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

WEST, WEBB, ALLBRITTON & GENTRY, P.C.
1515 Emerald Plaza
College Station, Texas 77845
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

JOHN "JAY" RUDINGER, JR.
State Bar No. 24067852 / SDTX No. 1421393
Email ~ jay.rudinger@westwebblaw.com
**ATTORNEY-IN-CHARGE**
HANNA LEE
Email ~ hanna.lee@westwebblaw.com
State Bar No. 24122232 / SDTX No. 3839446
GAINES WEST
State Bar No. 21197500 / SDTX No. 5327
Email ~ gaines.west@westwebblaw.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................iii

    I.    INTRODUCTION ...........................................................................................1

    II.    FACTS OF THE CASE ..................................................................................2

    III.    SUMMARY JUDGMENT STANDARD ......................................................5

    IV.    ARGUMENTS AND AUTHORITIES ..........................................................6

        A.    The Court should deny Texas A&M's Motion for Summary Judgment because: (i) *Cummings* is not binding on this Court's treatment of Van Overdam's Title IX selective enforcement claim, (ii) Van Overdam's Article III standing does not depend on his ability to recover emotional or reputational damages, and (iii) Texas A&M failed to meet its burden to establish that no genuine issue of material fact exists with regard to its standing argument. ...................................................................................6

        B.    The Court should deny Texas A&M's Motion because a genuine issue of material fact exists as to Van Overdam's Title IX Selective Enforcement claim against Texas A&M. ..............................................................................9

        C.    Texas A&M's Motion should be dismissed because the application of the *McDonnell Douglas* framework is not recognized for Title IX selective enforcement claims in the Fifth Circuit. .........................................11

        D.    Texas A&M's Motion should also be denied because the Court has already considered, and denied, Texas A&M's argument related to the Fifth Circuit's dismissal. ...............................................................................12

    V.    PRAYER FOR RELIEF ..............................................................................12

CERTIFICATE OF SERVICE .........................................................................................13

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................6

*Arceneaux v. Assumption Par. Sch. Bd.*,
　733 F. App'x 175........................................................................................................12

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)....................................................................................................5

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
　142 S. Ct. 1562 (2022) ...........................................................................................7, 8

*Doe v. Columbia Coll. Chicago*,
　299 F. Supp. 3d 939, 957 (N.D. Ill, 2017) ...............................................................9

*Doe v. Univ. of Nebraska*,
　No. 4:18CV3142, 2021 WL 242632 (D. Neb. Feb. 8, 2021) ..................................9

*Doe v. Washington Univ.*,
　434 F. Supp. 3d at 735 (E.D. Mo. 2020) ..................................................................9

*Leora v. Kingsville Indep. Sch. Dist.*,
　No. 2:21-CV-00031, 2023 WL 610548 (S.D. Tex. Sept. 19, 2023) ........................7

*Lozano v. Baylor University,*
　No. 6:16-CV-403-RP, 2023 WL 8103167 (W.D. Tex. Nov. 21, 2023) ..................7, 8

*Lujan v. Defenders of Wildlife,*
　504 U.S. 555 (1992) ....................................................................................................8

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ..........................................11, 12

*Moreno v. Sentinel Inc. Co., Ltd.*,
　35 F.4th 965 (5th Cir. 2022) ....................................................................................5, 6

*Nguyen v. Regents of Univ. of California*,
　823 F. App'x 497 (9th Cir. 2020) ............................................................................12

*Pasco v. Knoblauch*,
　223 Fed. Appx. 319 (5th Cir. 2007) ........................................................................6

*Rolex Watch U.S.A., Inc., v. Beckertime, LLC, et al.,*
    No. 4:20-CV-01060, 2021 WL 4311450 (N.D. Tex. Sept. 21, 2021) ........................6

*Rubinstein v. Adm'rs of the Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) ...............................................................................6

*Xiaolu Peter Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) ...................................................................9

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994). ..................................................................................9

**RULES**

20 U.S.C. § 1681 ................................................................................................5, 9

Fed. R. Civ. P. 56(a) .........................................................................................5, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUSTIN VAN OVERDAM, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | CASE NO. 4:18-CV-02011 |
| § | | |
| TEXAS A&M UNIVERSITY, *et al.*, § | | |
| *Defendant.* § | | |

**PLAINTIFF AUSTIN VAN OVERDAM'S RESPONSE TO
DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and files this Response to Defendant Texas A&M University's ("Defendant" or "Texas A&M") Motion for Summary Judgment (the "Motion"), and respectfully requests that the Court deny Defendant's Motion for the reasons outlined below.

**I. INTRODUCTION**

Texas A&M, including its officers and employees, intentionally discriminated against Van Overdam based on his sex throughout Texas A&M's Title IX disciplinary process, which constitutes a violation of Title IX. Defendant's overarching problem throughout its Motion for Summary Judgment, is that it asks the Court to construe the facts of this case in Defendant's favor and asks the Court to adopt Defendant's rigid and unsupported value judgment on information that constitutes comparator evidence in a selective enforcement claim. However, as demonstrated below, Van Overdam has produced sufficient evidence to show that a genuine issue of material fact exists with regard to Plaintiff's selective enforcement claim and such fact issues must be determined by a jury.

Page 1

In addition, absent express instructions from Congress indicating otherwise, punitive damages are available to Van Overdam under Title IX. The general presumption is that a court has the power to provide any relief under a statutory cause of action. Without additional evidence of Congress's intent to limit remedies under Title IX, a plaintiff should be allowed to fully enforce the provisions of the statute. As such, Defendant's argument that Plaintiff lacks standing to bring his selective enforcement claim is without merit.

## II. FACTS OF THE CASE

Van Overdam was a student at Texas A&M and a member of the swim team. Van Overdam connected with Texas A&M Student, Hannah Shaw, through Tinder. After exchanging private messages, Shaw visited Van Overdam's apartment and engaged in a sexual liaison. The encounter between Shaw and Van Overdam—who previous to, or after their one meeting, had no contact with one another—can be described by four acts which occurred in chronological order:

Act. 1, vaginal intercourse;

Act 2, anal intercourse;

Act 3, Shaw performs oral sex on Van Overdam;

Act 4, Shaw leaves Van Overdam's apartment.

Eight months after Van Overdam's encounter with Shaw, Texas A&M informed Van Overdam that Shaw made complaints against him for sexual abuse, sexual contact, and dating violence. The sexual activity described above as Acts 2 and 3 became the subject of Shaw's complaints against Van Overdam.

Texas A&M investigated the complaints and conducted a hearing through a process in which Texas A&M provided unequal assistance to Shaw and limited Van Overdam's ability to defend himself. Specifically, Texas A&M assured Shaw that she would not need an attorney

because Texas A&M would handle her case, but Texas A&M did not provide any similar employee support staff to protect Van Overdam's interests. Texas A&M excluded relevant evidence from the hearing by unilaterally stopping Shaw's testimony about her past sexual experiences on Tinder, which was testimony that implied Tinder "hookup" encounters included a "script" that followed the general pattern of sexual acts which Shaw and Van Overdam performed together. Texas A&M also excluded evidence of Shaw's mental health records, which may have included statements that would have undermined her credibility. By intentionally providing uneven assistance to Shaw and limiting the evidence to a "he said, she said" swearing match, Texas A&M intentionally limited the scope of the hearing and hampered Van Overdam's ability to defend himself so that Texas A&M could find in favor of Shaw, a female, and against Van Overdam, a male—as is Texas A&M's pattern.

During the Title IX proceedings, there were several inconsistencies that should have alerted Texas A&M that a more thorough investigation into Shaw's claims was necessary. By way of example, Shaw changed her story between the time of the investigation and the hearing. Van Overdam was charged with nonconsensual acts related to Shaw's original allegation that, when she performed oral sex in Act 3, it was nonconsensual. However, Shaw later testified that the vaginal sex in Act 1 and the oral sex in Act 3 were consensual. At the hearing, Shaw maintained that the conduct at issue in Act 2 was nonconsensual.

Despite the undisputed chronological sequence of sexual acts, Texas A&M's panel adopted the finding that only Act 2 of the encounter was nonconsensual and punished Van Overdam as such. The Texas A&M panel never explained how it reconciled the finding of responsibility for an allegedly nonconsensual sex act in Act 2, but then a finding of no responsibility in the subsequent Act 3, which occurred immediately after Act 2. Said differently, Texas A&M found that Van

Overdam was responsible for nonconsensual anal sex, and at the same time Texas A&M found that Van Overdam was not responsible for oral sex which Shaw performed on Van Overdam immediately after the allegedly nonconsensual anal sex.

In addition to the above, Texas A&M's panel also found that Van Overdam was not responsible for the related dating violence charge, which was based on Shaw's accusation that Van Overdam forced her into anal intercourse by holding her wrists. Specifically, Shaw alleged that Van Overdam held her wrists to force her to continue having anal intercourse. Despite Shaw's testimony, Texas A&M's panel entered a finding of no responsibility as it related to the dating violence charge against Van Overdam. Accordingly, the panel apparently believed Shaw to be credible with respect to the charge focused on anal intercourse, but the panel did not find Shaw credible enough to reach a finding of responsibility for the conduct Shaw alleged Van Overdam engaged in to accomplish the allegedly nonconsensual anal intercourse.

Texas A&M has never explained the disconnect between these findings, and the absence of an internally consistent rationale indicates that Texas A&M produced this outcome based on an arbitrary and illegal motive—namely, gender bias.[1] The Texas A&M hearing panel produced its conclusions and punished Van Overdam within the context of rising pressure from the public and the federal government. National newspapers have highlighted reports of sexual assaults at Texas A&M, and, like many universities facing the threat of losing federal funding, Texas A&M responded to the Department of Education's 2011 Dear Colleague Letter by ramping up prosecutions of sexual misconduct through its Title IX office. As a result of Texas A&M's vigorous Title IX enforcement, accused students that happened to be male were regularly confronted by hostile administrative employees through the investigation and hearing process. Texas A&M

---

[1] Although it's Motion contained additional 'legitimate reasons' for investigating and suspending Van Overdam, Texas A&M still has not reconciled its illogical findings.

Page 4

employees even harangued one male student during the hearing process, asking him if "he is even worthy of wearing an Aggie ring."[2]

Although Texas A&M publicly claims that it strives for a fair process for both accusers and the accused within its misconduct process, Texas A&M treated Van Overdam, a male, less favorably than similarly situated females. Moreover, Texas A&M enforced harsher discipline against Van Overdam than it did against another female, who was similarly situated to Van Overdam as is required to prove a selective enforcement claim.

Because of Texas A&M's selective enforcement and discipline against Van Overdam, Van Overdam filed this lawsuit against Texas A&M and seeks to clear his name by obtaining a retraction of the erroneous sanctions issued by Texas A&M. Additionally, Van Overdam seeks to recover damages under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, ("Title IX").

### III. SUMMARY JUDGMENT STANDARD

To be entitled to summary judgment, the movant must establish that there is no issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When the party without the burden of proof moves for summary judgment, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact."[3] "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4] In making this determination, the Court must construe

---

[2] *See* Affidavit of Cameron Reynolds, at ¶ 4, a true and correct copy of which is attached hereto as Exhibit A.
[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).
[4] *Moreno v. Sentinel Ins. Co., Ltd.,* 35 F.4th 965, 974 (5th Cir. 2022).

Page 5

all facts and reasonable inferences in favor of the nonmovant and should not weigh evidence or make credibility findings.[5]

In short, summary judgment is not appropriate unless, after viewing the evidence in the light most favorable to the nonmoving party, no reasonable factfinder or jury could return a verdict for that party.[6] With regard to dispositive motions, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] As detailed further below, a review of the facts relative to the operative legal standards in this cause shows that such evidence is not so one-sided in favor of the movant, Texas A&M. Accordingly, Texas A&M's Motion should be denied.

Finally, in this case, Texas A&M's motives and intentions that underlay its actions against Van Overdam are the primary issues to be determined – and summary judgment is "rarely proper when an issue of intent is involved."[8] Summary judgments are not commonly granted to determine issues of intent because issues related to Texas A&M's motives and intent are inextricably bound to questions of credibility that only a jury or factfinder can appropriately resolve.[9]

## IV. ARGUMENTS AND AUTHORITIES

**A.     The Court should deny Texas A&M's Motion for Summary Judgment because: (i) *Cummings* is not binding on this Court's treatment of Van Overdam's Title IX selective enforcement claim, (ii) Van Overdam's Article III standing does not depend on his ability to recover emotional or reputational damages, and (iii) Texas A&M failed to meet its burden to establish that no genuine issue of material fact exists with regard to its standing argument.**

---

[5] *Id.* at 974.
[6] *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[8] *Pasco v. Knoblauch*, 223 Fed. Appx. 319, 322 (5th Cir. 2007); *see also Rolex Watch U.S.A., Inc., v. Beckertime, LLC, et al.,* No. 4:20-CV-01060, 2021 WL 4311450, at *6 (N.D. Tex. Sept. 21, 2021) (O'Connor, J.).
[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

### i.  This Court should not adopt the *Cummings* opinion because it is not binding on Van Overdam's Title IX Selective Enforcement Claim.

As an initial matter, Texas A&M's Motion overstates the value and applicability of an opinion recently issued by the United States Supreme Court in *Cummings v. Premier Rehab Keller, P.L.L.C.*.[10] In *Cummings,* the Court held that emotional distress damages were not available to plaintiffs seeking to recover on claims brought under the Affordable Care Act and Section 794 of the Rehabilitation Act. The Court also mentioned, in *dictum*, that its analysis in *Cummings* would likely apply to other "Spending Clause statutes," which would include Title IX.[11] In its Motion, Texas A&M's relies on the Supreme Court's *dicta,* and various out–of–state district courts, which Texas A&M cherry picked to support its proposition that *Cummings* bars Van Overdam from recovering emotional or reputational damages. In addition, the one Texas case cited in the Motion only addresses the availability of punitive damages.[12]

This Court is not bound by the *Cummings* decision. In fact, in *Lozano v. Baylor University*[13] the United States District Court for the Western District of Texas recently declined to apply the *Cummings* holding, which would have deprived the plaintiff, Lozano, from receiving an award for her loss of dignity damages. While discussing its decision not to apply the *Cummings* holding, the *Lozano* court stated that "[i]n the absence of precedential or persuasive authority, the Court could not grant judgment as a matter of law on the issue of loss of dignity damages."[14] In its Motion, as with the defendant in *Lozano*, Texas A&M has failed to present precedential or persuasive authority against Van Overdam's recovery of emotional and reputational damages.

---

[10] 142 S. Ct. 1562 (2022).
[11] *Id.*
[12] *Leora v. Kingsville Indep. Sch. Dist.*, No. 2:21-CV-00031, 2023 WL 610548, at *4 (S.D. Tex. Sept. 19, 2023) (finding that a Title IX plaintiff could not recover punitive damages due to *Cummings.*).
[13] No. 6:16-CV-403-RP, 2023 WL 8103167, at *2 (W.D. Tex. Nov. 21, 2023).
[14] *Id.*

Based on the above, *Cummings* does not function as an immediate bar to Van Overdam's recovery for emotional, reputational damages, or punitive damages. This Court has the authority to decide whether to apply the *Cummings* holding, which it should not do absent requisite precedential and persuasive authority from Texas A&M. For the same reasons stated by the *Lozano* court, Van Overdam respectfully requests that this Court refrain from adopting the *Cummings* holding because Texas A&M cannot provide sufficient precedential or persuasive authority to support the application of *Cummings*.

### ii. Van Overdam has Article III standing to bring his Title IX selective enforcement claim regardless of *Cummings*.

Generally, to establish Article III standing, a plaintiff bears the burden of demonstrating that the plaintiff has "suffered an injury in fact," which is "fairly traceable" to the defendant, and it is likely that the plaintiff's injury "will be redressed by a favorable decision."[15] In the Motion, Texas A&M erroneously argues that the adoption of the *Cummings* opinion would deprive Van Overdam of the requisite standing to bring his Title IX Selective Enforcement claim. Specifically, Texas A&M speculates as to whether Van Overdam could establish Article III standing without what Texas A&M believes to be his 'most obvious path to discovery.'

As detailed above, Texas A&M's Motion fails to meet its burden as movant to establish that there are no genuine issues of material fact related to Van Overdam's Article III standing to bring his Title IX selective enforcement claim. Texas A&M's arguments regarding Van Overdam's standing are hypothetical, which, by definition, rely on a genuine issue of material fact. As such, Texas A&M is not entitled to judgment as a matter of law.[16]

---

[15] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).
[16] FED. R. CIV. P. 56(a).

Page 8

**B.      The Court should deny Texas A&M's Motion because a genuine issue of material fact exists as to Van Overdam's Title IX Selective Enforcement claim against Texas A&M.**

   i.      **Legal Standard for Title IX Selective Enforcement Claims**

Title IX provides that: "No person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[17] Here, Van Overdam claims that Texas A&M engaged in conduct against him that violated Title IX under the selective enforcement theory of Title IX liability. In a Title IX selective enforcement action, the plaintiff asserts that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."[18] To prevail, the plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University."[19] *Id.* To determine whether the circumstances are similarly situated, the test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."[20] *"*Exact correlation is neither likely nor necessary, but the cases must be fair cogeners." *Id.*

Throughout the lawsuit and in its Motion, Texas A&M has maintained an unreasonably limited view on what constitutes competent comparator evidence sufficient to meet Van Overdam's burden of proof. Texas A&M regularly claims that Van Overdam must identify a female student who was in a situation virtually identical to Van Overdam's in every way, except that Texas A&M treated that female more favorably. For months, Texas A&M has rejected comparator evidence

---

[17] 20 U.S.C. § 1681(a).
[18] *Washington Univ.*, 434 F. Supp. 3d at *757 (quoting *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017)); *see also Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).
[19] *Washington Univ.* 434 F. Supp. 3d at *757 (quoting *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015).
[20] *Doe v. Univ. of Nebraska*, No. 4:18CV3142, 2021 WL 242632, at *7 (D. Neb. Feb. 8, 2021).

presented by Van Overdam by pointing to any insignificant difference between Van Overdam and the particular female comparator. In its Motion, Texas A&M claims that Van Overdam has failed to identify "a qualifying comparator." However, Texas A&M's argument fails because the issue of *who* constitutes an appropriate comparator for Van Overdam's selective enforcement claim is a fact question that should be decided by the jury.

> ii. **Van Overdam produced sufficient evidence to show that a genuine issue of material fact exists such that the Motion should be denied, and Van Overdam's Selective Enforcement Claim should be determined by a jury.**

In November of 2019, Van Overdam identified a female comparator for Van Overdam's selective enforcement claim.[21] This female student was similarly situated to Van Overdam in that she was charged with allegations of sexual misconduct made by a male.[22] In addition, this female student and Van Overdam received multiple charges related to the allegations of sexual misconduct. Further, just like Van Overdam, the Title IX hearing panel found her responsible for some, but not all, charges of sexual misconduct levied against her. However, the similarities end at the sanctioning phase of the Title IX proceedings.

Unlike Van Overdam, Texas A&M declined to suspend the female student despite finding her responsible for sexual misconduct. This outcome was confirmed by Texas A&M's general counsel before the Court.[23] Based on the above, a prudent person, looking objectively at the incidents involved in the Title IX proceedings for the female student and Van Overdam, would think of the parties as roughly equivalent. Moreover, Texas A&M was the protagonist for both parties and is similarly situated in both proceedings.[24] Accordingly, Texas A&M's Motion must be

---

[21] *See* Tr. re: Mot. Hr'g held on 11/5/19 before Judge Keith P. Ellison. Court Reporter/Transcriber Nichole Forrest, CRR, RDR, CRC. Released of Transcript Restriction set for 4/20/2020., filed. (NicholeForrest,) (Entered: 01/20/2020) 17:21-20:6, November 5, 2019, ECF No. 65, attached hereto as Exhibit B.
[22] *Id.*
[23] *Id.* at 18:22-19:11.
[24] *Id.* at 17:21-20:6.

denied because Van Overdam has demonstrated a genuine issue of material fact related to his selective enforcement claim.

In addition to the information outlined above, which is sufficient to defeat Texas A&M's Motion, Van Overdam's expert, Tumulesh K.S. Solanky, Ph.D. ("Dr. Solanky"), has analyzed over 175 Title IX cases, along with Excel documents containing more than 750 Title IX cases. Dr. Solanky prepared an affidavit illustrating the relevant statistical data and his statistical interpretations of such data. A true and correct copy of Dr. Solanky's Affidavit is attached hereto and incorporated herein as Exhibit C.[25]

As demonstrated in Exhibit C, Dr. Solanky discovered several highly statistically significant disparities between men and women throughout the Title IX investigation and hearing process at Texas A&M.[26] For example, of the students that were charged and found responsible for sexual misconduct, no females were suspended or expelled from Texas A&M while *55% of males were suspended or expelled.*[27] This evidence alone is sufficient to show the existence of a genuine issue of material fact related to Van Overdam's selective enforcement claim, much less the other statistically significant disparities that Dr. Solanky identified. As such, Texas A&M's Motion should be denied.

C. **Texas A&M's Motion should be dismissed because the application of the *McDonnell Douglas* framework is not recognized for Title IX selective enforcement claims in the Fifth Circuit.**

Texas A&M's Motion argues that Van Overdam's selective enforcement claim should be dismissed as a matter of law because it fails at the pretext stage of the *McDonnell Douglas* framework. It is important to note that the *McDonnell Douglas*[28] framework is a method developed

---

[25] *See also,* Expert Report of Tumulesh K.S. Solanky, Ph.D., attached hereto as Exhibit D.
[26] *See* Exhibit C.
[27] *Id.* at pg. 17.
[28] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

by the Supreme Court for plaintiff's to prove intentional discrimination through the use of circumstantial evidence in *Title VII claims.*[29] Contrary to Texas A&M's representations in the Motion, the applicability of the *McDonnell Douglas* framework in the Fifth Circuit remains an unsettled issue. Further, to the extent that one is necessary, this response shall also serve as Van Overdam's formal objection to the application of the *McDonnell Douglas* framework and its Title VII jurisprudence to Van Overdam's Title IX selective enforcement claim.[30] Van Overdam filed this lawsuit against Texas A&M pursuant to Title IX, and Title IX jurisprudence should be applied to determine the merits of Van Overdam's claims. Although he objected to the application of *McDonnell Douglas,* based on the information outlined above and the evidence attached hereto, Van Overdam established a genuine issue of material fact related to whether the evidence presented is sufficient for a reasonably prudent factfinder to reject Texas A&M's explanations as pretext to its discrimination against Van Overdam based on his sex.

**D.     Texas A&M's Motion should also be denied because the Court has already considered, and denied, Texas A&M's argument related to the Fifth Circuit's dismissal.**

Finally, in the Motion, Texas A&M reasserts its argument that dismissal is appropriate because the Fifth Circuit previously dismissed all of Van Overdam's claims. The Court has heard Texas A&M's arguments related to the alleged Fifth Circuit dismissal in a previous motion, which was denied.[31] As such, to the extent that a response is necessary, Van Overdam disputes Texas A&M's contention that the Fifth Circuit dismissed all of his claims, and Van Overdam supports

---

[29] *Id.*
[30] *See Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 178-89 (noting that neither party on appeal contested the district court's application of Title VII jurisprudence to Title IX claims); *see also Nguyen v. Regents of Univ. of California*, 823 F. App'x 497, 502 (9th Cir. 2020) (Noting that the parties agreed that the *McDonnell Douglas* burden shifting analysis applied to Title IX claim.).
[31] Min. Entry for proceedings before Judge Keith P Ellison. Mot. Hr'g held on 7/5/2023 (Entered: 07/07/2023).

Page 12

the Court's ruling denying Texas A&M's motion related to this matter. Accordingly, Texas A&M's Motion should be denied.

## V. PRAYER FOR RELIEF

NOW THEREFORE, Plaintiff Austin Van Overdam respectfully requests that the Court deny Defendants' Motion for Summary Judgment, and Plaintiff requests that he be granted all such other and further relief, at law or in equity, for which he may be justly entitled.

Respectfully submitted,

**West, Webb, Allbritton & Gentry, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone: (979) 694-7000
Facsimile: (979) 694-8000

By:   */s/ Jay Rudinger*
JOHN "JAY" RUDINGER, JR.
State Bar No. 24067852 / SDTX No. 1421393
Email: jay.rudinger@westwebblaw.com
**ATTORNEY-IN-CHARGE**
HANNA LEE
State Bar No. 24122232 / SDTX No. 3839446
Email: hanna.lee@westwebblaw.com
GAINES WEST
State Bar No. 21197500 / SDTX No. 5327

Attorneys for Plaintiff - Austin Van Overdam

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Houston Division on November 30, 2023, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

*/s/ Jay Rudinger*
JOHN "JAY" RUDINGER