United States District Court
Southern District of Texas
**ENTERED**
January 10, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **AUSTIN VAN OVERDAM,** § | |
| § | |
| *Plaintiff*, § | |
| VS. § | CIVIL ACTION NO. 4:18-cv-02011 |
| § | |
| **TEXAS A&M UNIVERSITY,** § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM & ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Texas A&M University ("Defendant" or "TAMU"). ECF No. 164. Having reviewed the parties' arguments and applicable law, the Court **GRANTS** Defendant's Motion in its entirety.

I.  BACKGROUND

The facts as assumed by the Fifth Circuit are detailed in *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 525-26 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 2466 (2023). To briefly summarize, in 2015, Plaintiff Austin Van Overdam ("Plaintiff" or "Van Overdam") and H.S. were students at TAMU when they met through an online dating application. They had one sexual encounter, following which H.S. filed a Title IX complaint against Plaintiff. TAMU determined that Plaintiff had potentially violated its student rules relating to sexual abuse, sexual contact, and dating violence. *See* ECF 164-1, Ex. 4 at 68-69. Following a live disciplinary hearing, a TAMU Student Life Conduct panel found Plaintiff responsible for sexual abuse by anally penetrating H.S. without her clear consent. Plaintiff received a six-month suspension, conduct probation, and a required sexual health and consent training session. *See* ECF 164-1, Ex. 5 at 71-73. An appeal panel affirmed this decision. *See* ECF 164-1, Ex. 6 at 75. Plaintiff returned to TAMU after his suspension

1

and graduated in 2019 without further incident.

Plaintiff brought this suit in 2018 against TAMU and various university administrators alleging sex discrimination under Title IX of the Education Amendments of 1972 ("Title IX") and a deprivation of constitutional due process under 42 U.S.C. § 1983. "He based his Title IX claim on two well-recognized theories of liability within the university disciplinary context: (1) erroneous outcome and (2) selective enforcement." *Overdam*, 43 F.4th at 526. This Court previously dismissed Plaintiff's Title IX erroneous outcome and procedural due process claims against TAMU, along with all claims alleged against the individual defendants. *See* Minute Entry dated 11/05/2019. The only claim the Court allowed to proceed was Plaintiff's Title IX selective enforcement claim against TAMU, which the Court found barely cleared the pleading hurdle. Plaintiff filed a motion for reconsideration, which this Court denied. ECF No. 81. The Fifth Circuit affirmed this Court's ruling on interlocutory appeal. *See Overdam*, 43 F.4th. Thus, Plaintiff's one live claim is brought under a selective enforcement theory of Title IX.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence

of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III. ANALYSIS

#### A. Availability of emotional, reputational, punitive, and dignitary damages

The Court must first determine whether the monetary damages Plaintiff seeks are available to him under Title IX. Plaintiff's Second Amended Complaint asks that the Court award Plaintiff "a judgment against Defendants for compensatory damages, punitive damages, and attorneys' fees." ECF No. 42 at 16; *see also* ECF No. 166 at 9 (stating that Plaintiff "seeks to recover damages under Title IX").

The Supreme Court recently clarified that emotional distress damages are not recoverable under Section 504 of the Rehabilitation Act ("Rehabilitation Act") and Section 1557 of the Patient Protection and Affordable Care Act (the "ACA"). *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230, *reh'g denied*, 142 S. Ct. 2853 (2022). The Rehabilitation Act and the ACA are two of four antidiscrimination statutes, passed by Congress pursuant to its authority under the Spending Clause of the Constitution, that "prohibit[] recipients of federal financial assistance from discriminating based on certain protected grounds." *Id.* at 217-18. The other two statutes are Title VI of the Civil Rights Act of 1964 ("Title VI") and Title IX, the statute directly at issue in this litigation. *Id.* at 218.

The *Cummings* Court explained that Spending Clause statutes operate similarly to a

contract: in exchange for federal funds, the recipient consents to complying with conditions imposed by the federal government. Under this contract-law analogy, the Court stated that "[a] particular remedy is thus 'appropriate relief' in a private Spending Clause action 'only if the funding recipient is *on notice that*, by accepting federal funding, it exposes itself to liability of that nature.'" *Id.* (emphasis in original) (quoting *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)). "A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Barnes*, 536 U.S. at 187 (holding that punitive damages may not be awarded in private suits brought under Title VI, the Americans with Disabilities Act, and the Rehabilitation Act because such damages are generally not available for breach of contract). Because emotional distress damages were not traditionally available in contract law, the Court held that "[u]nder *Barnes*, we therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress." *Cummings*, 596 U.S. at 222.

Although neither *Cummings* nor *Barnes* directly concerned Title IX, nearly every court to consider the issue has concluded that these cases *do* apply to Title IX (which, as noted above, was enacted pursuant to Congress's Spending Clause authority), thereby barring Title IX plaintiffs from recovering damages not traditionally available in contract law. Here, Plaintiff argues that "*Cummings* does not function as an immediate bar to Van Overdam's recovery for emotional, reputational damages, or punitive damages." ECF No. 166 at 12. The Court disagrees. As another court in this district succinctly stated:

> *Barnes* and *Cummings* draw upon the same reasoning to state that the only remedies available for claims prosecuted as implied-right-of-action cases arising from federal spending clause legislation are those traditionally available in ordinary contract actions. **It is beyond dispute that Title IX is such spending clause legislation.** And the Supreme Court has made it clear in *Barnes* and *Cummings* that **neither punitive damages nor damages for emotional injuries are available in such cases**. That is because recipients of federal funds are entitled to rely on

4

exposure to liability only for damages that fall under general and traditional contract rules—not special cases, exceptions, or state law variances.

*Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-CV-00031, 2023 WL 6130548, at *4 (S.D. Tex. Sept. 19, 2023) (emphasis added); *see also T. F. v. Greenwood ISD*, No. 7:20-CV-215-ADA, 2022 WL 17477597, at *9 (W.D. Tex. Dec. 5, 2022) ("Plaintiffs cannot claim emotional damages under Title IX."); *Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745, at *3 (D. Ariz. Dec. 6, 2022) ("The Court agrees with [Defendant] that, in light of *Cummings*, Doe's claims for non-contractual damages [under Title IX] (including emotional distress and reputational harm damages) are no longer valid."); *Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *26 (D.D.C. May 23, 2022), *reconsideration denied*, No. CV 18-1928 (JDB), 2023 WL 4684897 (D.D.C. July 21, 2023) (internal citation omitted) ("*Cummings* explicitly precludes recovery for emotional distress damages and, this Court concludes that *Cummings*'s reasoning also forbids recovery for reputation damages.").

Plaintiff relies on a single case in which a Texas district court declined to apply *Cummings* to bar a plaintiff from recovering for loss of dignity under Title IX. *Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2023 WL 8103167, at *2 (W.D. Tex. Nov. 21, 2023). However, the court went on to acknowledge that its decision could be a "potential error" and that the law may develop to make loss of dignity damages unavailable in Title IX actions. *Id.* The court did not expand significantly on its reasoning because the issue was largely mooted. *Id.* ("Since no Title IX damages were awarded, [Defendant] cannot claim that the denial of its motions for judgment as a matter of law on loss of dignity damages has caused it harm."). Moreover, as Defendant points out, "[v]arious post-*Cummings* courts have analyzed the 'dignitary' issue in more detail than *Lozano*. Most, if not all, of these other courts concluded that loss of dignity is not an available remedy for violations of Spending Clause statutes." ECF No. 168 at 4; *see, e.g.*, *Fantasia v.*

*Montefiore New Rochelle*, No. 19 CV 11054 (VB), 2022 WL 20540940, at *4 (S.D.N.Y. June 16, 2022) ("Here, the Court concludes damages for dignitary harm are not an available remedy for violations of the [Rehabilitation Act] or ACA.").

More importantly, however, the Court does not find in the record any definitive indication that Plaintiff seeks dignitary damages. Nowhere does Plaintiff state that the specific damages he seeks are for loss of dignity, nor does he cite to any evidence that he suffered a dignity injury. Even if the Court were to assume *arguendo* that dignitary damages are recoverable under Title IX, the absence of a genuine issue of material fact with respect to the existence of such damages entitles Defendant to summary judgment as a matter of law on this issue.

Plaintiff does not cite to any authorities or make any other effort to establish that the specific damages he seeks (emotional, reputational, and punitive) are "traditionally, generally, or normally available for contract actions." *Cummings*, 596 U.S. at 223 (quoting *Barnes*, 536 U.S. at 187–88) (cleaned up). In fact, the Court finds that Plaintiff fails to make "any reasoned argument for making an exception to the spending clause statutory analysis for Title IX cases." *Loera*, 2023 WL 6130548, at *5. In sum, the Court holds that the emotional, reputational, and punitive damages sought by Plaintiff are not available post-*Cummings* and *Barnes.*

### i. Whether Plaintiff has standing

Given the Court's findings on damages post-*Cummings*, the Court must determine whether Plaintiff has demonstrated a genuine dispute that he suffered a redressable injury, as needed for Article III standing. Constitutional standing has three clearly established elements: 1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, 2) a causal connection between the injury and the conduct complained of, and 3) the likelihood that a favorable decision will redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "At all stages of

litigation, a plaintiff must maintain a personal interest in the dispute." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Plaintiff may have had a personal interest in this dispute at the outset of the lawsuit, but the case will be rendered moot if, at this stage of the litigation, the Court "finds that it can no longer provide [Plaintiff] with any effectual relief." *Id.*

Plaintiff satisfies the first two elements of standing (injury and traceability). However, Defendant calls into question Plaintiff's ability to satisfy the third required element of standing by arguing that Plaintiff's "most obvious path for a redressable injury—alleged emotional and reputational harm—is no longer viable due to *Cummings*." ECF No. 164 at 16. Plaintiff states in his Response Brief that, through this lawsuit, he seeks "to clear his name by obtaining a retraction of the erroneous sanctions issued by Texas A&M" and "to recover damages under Title IX." ECF No. 166 at 9. In his Second Amended Complaint, Plaintiff prays for the following:

> Plaintiff Austin Van Overdam asks that . . . Plaintiff be awarded a judgment against Defendants for compensatory damages, punitive damages, and attorneys' fees. Van Overdam further ask [sic] that the Court issue an injunction against Defendants to retract its sanctions against Van Overdam, issue an apology, provide Van Overdam a new hearing with adequate process, and reinstate Van Overdam's status as a student in good standing at the university. Moreover, Van Overdam requests such further relief, both general and special, at law or in equity, to which Plaintiff may show himself to be justly entitled.

ECF No. 42 at 16.

As explained above, emotional, reputational, and punitive damages are not available to Plaintiff. The Supreme Court has clearly stated that "[a]s soon as a plea for compensatory damages fails at the factfinding stage of litigation, that plea can no longer support jurisdiction for a favorable judgment." *Uzuegbunam*, 141 S. Ct. at 801. Additionally, "[a] request for attorney's fees or costs cannot establish standing because those awards are merely a 'byproduct' of a suit that already succeeded, not a form of redressability." *Id.*

Although "a request for nominal damages satisfies the redressability element of standing

7

where a plaintiff's claim is based on a completed violation of a legal right," Plaintiff has not requested such relief in his Second Amended Complaint or Response Brief. *Id.* at 802; *see also Stern v. Hinds Cnty., Miss.*, 436 F. App'x 381, 382 (5th Cir. 2011) (holding that the [t]he district court did not err in failing to consider nominal damages regarding [plaintiff's] claim . . . because he did not seek such relief."); *Busick v. Neal*, 380 F. App'x 392, 398-99 (5th Cir. 2010) (affirming grant of summary judgment on plaintiff's federal freedom of religion claims because his claim for compensatory damages was barred by law, his claims for declaratory and injunctive relief were moot, he did not request nominal damages so "could not survive summary judgment on that basis," and he failed to present evidence to support his request for punitive damages). Because Plaintiff failed to set forth a claim for nominal damages, and because his requests for compensatory and punitive damages are barred by *Cummings* and *Barnes*, Plaintiff cannot rely on these monetary damages to satisfy the redressability prong of the standing analysis.

The question, then, is whether Plaintiff seeks any non-monetary relief that is not yet moot—in other words, whether evidence exists that Plaintiff's injury could be redressed by a "retraction of the erroneous sanctions issued by Texas A&M." ECF No. 166 at 9. Because Defendant's Motion for Summary Judgment asserts that Plaintiff has no evidence to support the redressability of his injury (an essential element of his case), the burden has shifted to Plaintiff to demonstrate a genuine dispute for trial. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017); *see also Little*, 37 F.3d at 1075 (stating that if the party moving for summary judgment meets its initial burden of demonstrating the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial"). Other than attempting to refute the applicability of *Cummings* to the instant case, Plaintiff's Response Brief fails to make any showing that would create a genuine

8

dispute as to the redressability of his injuries. *See* ECF No. 166 at 12.

During this Court's hearing in 2019 on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, the parties debated whether the case was moot since Plaintiff had successfully graduated from TAMU and was no longer a student, and TAMU had no ongoing authority over him. *See* ECF No. 65 at 3-7. Plaintiff contended that his "prayer that the Court order Defendants to retract, or expunge, the erroneous and void sanctions against Van Overdam is prospective in nature, and therefore, not moot." ECF No. 58. Defendant's counsel argued during the hearing that "there is no remedial relief that is prospective in nature" because Plaintiff "has not alleged that he has a permanent mark on his transcript," and "his transcript does not reflect the findings of the student conduct hearing." ECF No. 65 at 4. Plaintiff's counsel replied that the existence of a mark was a "factual dispute," and that Plaintiff needed discovery to demonstrate to the Court that TAMU "put marks on graduating students." *Id.* at 5. The Court, at that time, ruled that the case was not moot. *Id.* at 7. However, discovery has long closed, and Plaintiff has failed to point to any evidence of a notation in his records from TAMU that the Court could order Defendant to retract or expunge, if Plaintiff prevailed on his remaining Title IX claim.

The Fifth Circuit has been clear that a nonmovant cannot survive summary judgment with conclusory allegations or a scintilla of evidence:

> We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Little*, 37 F.3d at 1075 (emphasis in original); *see also Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

9

Given Plaintiff's failure to go beyond the pleadings to point to any proof of the redressability of his injuries, the Court finds that Plaintiff lacks standing, and Defendant is entitled to summary judgment on his Title IX claim on this basis alone. For the sake of completeness, however, the Court proceeds to explain how, even if Plaintiff *does* have standing (for instance, if the Court were to read a request for nominal damages into the boilerplate prayer language in his Second Amended Complaint), his Title IX claim fails on the merits.

### B. Plaintiff's Title IX selective enforcement claim

Defendant argues that it is entitled to summary judgment on Plaintiff's claim that TAMU "engaged in conduct against him that violated Title IX under the selective enforcement theory of Title IX liability." ECF No. 166 at 13. "A selective enforcement claim needs to allege that either punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019). These claims "are analogous to disparate-treatment claims brought in traditional discrimination cases, such as those brought under Title VII of the Civil Rights Act of 1964." *Doe v. Univ. of Texas at Austin,* No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019). Accordingly, "[d]istrict courts in this Circuit have used the *McDonnell Douglas* framework to analyze Title IX claims alleging disparate treatment on the basis of sex," specifically in cases involving indirect evidence of discrimination. *Gudgel v. Del Mar Coll.*, No. 2:16-CV-513, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018).[1]

---

[1] To summarize, in *McDonnell Douglas Corp. v. Green*, the Supreme Court ruled that in employment discrimination cases brought under Title VII in which there is only circumstantial evidence of discrimination, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. 792, 802 (1973). Then, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* Lastly, the burden shifts back to the plaintiff to establish that the defendant's proffered reason was merely pretext for discrimination. *Id.* at 804. Plaintiff argues that this framework is not recognized for Title IX

Following the *McDonnell Douglas* burden-shifting framework, Plaintiff must first establish a *prima facie* case of discrimination under Title IX by showing that he "(1) is a member of a protected class, (2) suffered an adverse action, and (3) was treated less favorably than other similarly situated students, outside the protected class, under nearly identical circumstances." *Pacheco v. St. Mary's Univ.*, No. 15-CV-1131 (RCL), 2017 WL 2670758, at *18 (W.D. Tex. June 20, 2017) (citing *McDonnell Douglas Corp.*, 411 U.S; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). It is undisputed that Plaintiff is a member of a protected class (males) and that he suffered an adverse action in the form of discipline by TAMU (suspension). The remaining question for the *prima facie* case, then, is whether Plaintiff can demonstrate that TAMU "treated other similarly situated female students more favorably under nearly identical circumstances." *Id.*[2]

---

selective enforcement claims in the Fifth Circuit. ECF No. 166 at 15-16. While the Fifth Circuit has stated that "the *McDonnell Douglas* framework's applicability to Title IX claims is unsettled in this circuit," *Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 178 (5th Cir. 2018), Plaintiff does not point to an alternative framework that he would prefer the Court utilize, nor does he address the numerous cases in which courts in this circuit *have* found the framework applicable. *See, e.g.*, *Gudgel*, 2018 WL 472829, at *2; *Herndon v. Coll. of Mainland*, No. CIV.A.G-06-0286, 2009 WL 367500, at *29 (S.D. Tex. Feb. 13, 2009) ("A disparate treatment claim is cognizable under Title IX and follows the Title VII framework."). In *Pacheco v. St. Mary's Univ.*, the court assessed the applicability of *McDonnell Douglas* to Title IX claims alleging disparate treatment of students based on sex and concluded that the framework was appropriate because: 1) the Fifth Circuit has used the framework "in a variety of cases" involving indirect evidence of discrimination, including ADA claims for disability discrimination and ADEA claims for age-based discrimination, and 2) "courts look to the body of law developed under Title VI and Title VII to analyze sex discrimination cases under Title IX." No. 15-CV-1131 (RCL), 2017 WL 2670758, at *13 (W.D. Tex. June 20, 2017). For the same reasons as the *Pacheco* court, the Court finds the *McDonnell Douglas* framework applicable to the present case.

[2] Plaintiff contends that the standard is for the comparator is "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." ECF No. 166 at 13. This is not the standard used in the Fifth Circuit. *See, e.g.*, *Lee*, 574 F.3d at 260 (stating that in a Title VII employment discrimination action, the plaintiff and comparator's circumstances, including the conduct that drew the adverse employment action, must be nearly identical); *Univ. of Texas at Austin*, 2019 WL 9076003, at *3 ("[T]he comparator analysis under Title IX is the same as the analysis in Title VII claims.").

11

Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff has failed to identify a qualifying comparator, an essential element of a selective enforcement claim:

> At [Van Overdam's] deposition, he admitted he lacked personal knowledge about potential comparators. And in his interrogatory responses, he merely listed every female who, over a five-year span, TAMU investigated for dating violence, domestic violence, sexual abuse, sexual contact, sexual discrimination, sexual harassment, and stalking. Van Overdam did not identify specific details about these cases, and he made no effort to account for whether: (1) these females' alleged misconduct was nearly identical to his; (2) TAMU found the charges against these females to be substantiated and, if so, the level of sanctions imposed; and (3) the females' cases involved the same decisionmakers as his case."

ECF No. 164 at 17.

Plaintiff contends that "Texas A&M's argument fails because the issue of *who* constitutes an appropriate comparator for Van Overdam's selective enforcement claim is a fact question that should be decided by the jury." ECF No. 166 at 14. Plaintiff is misguided: "It may be true that the [comparator] inquiry is often reserved for the fact-finder. But that is only the case when the plaintiff has produced sufficient evidence that would permit a reasonable fact-finder to conclude that the plaintiff and other [students] are similarly situated." *Morris v. Town of Indep.*, 827 F.3d 396, 402 (5th Cir. 2016). "When the plaintiff does not do so," as is the case here, "summary judgment is appropriate." *Id.*; *see, e.g.*, *Klocke*, 938 F.3d at 213 (affirming district court's grant of summary judgment on Title IX selective enforcement claim based on failure to identify any comparators in nearly identical circumstances).

Plaintiff argues that he has produced sufficient evidence to show that a genuine issue of material fact exists regarding his selective enforcement claim. Plaintiff states that he has identified a comparator, U.F.:

> This female student was similarly situated to Van Overdam in that she was charged with allegations of sexual misconduct made by a male. In addition, this female student and Van Overdam received multiple charges related to the allegations of sexual misconduct. Further, just like Van Overdam, the Title IX hearing panel found her responsible for some, but not all, charges of sexual misconduct levied against her. However, the similarities end

> at the sanctioning phase of the Title IX proceedings. Unlike Van Overdam, Texas A&M declined to suspend the female student despite finding her responsible for sexual misconduct.

ECF No. 166 at 14.

The only "evidence" Plaintiff provides is a citation to the parties' brief discussion of U.F. during a 2019 hearing held by the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. *See* ECF No. 65 (Transcript of Motion Hearing held on 11/05/2019). Plaintiff's vague and barebones statements provide virtually no details about U.F.'s alleged misconduct and are insufficient to establish that she was similarly situated to Plaintiff. *See, e.g.*, *Hardison v. Skinner*, No. 20-30643, 2022 WL 2668514, at \*3 (5th Cir. July 11, 2022) (affirming grant of summary judgment on plaintiff's Title VII discrimination claim, in part because plaintiff offered "no details as to [the proffered comparator's] alleged misconduct). Plaintiff was charged with sexual abuse, sexual contact, and dating violence. *See* ECF 164-1, Ex. 4 at 68-69. The TAMU Student Life Conduct panel found (and the appeal panel affirmed) that, by anally penetrating H.S. without clear consent, Plaintiff was responsible for sexual abuse. *See* ECF 164-1, Ex. 5 at 71-72 and Ex. 6 at 75. Nothing presented by Plaintiff indicates that U.F. was involved in an incident of sufficiently comparable seriousness resulting in "nearly identical" charges or findings of responsibility. Moreover, Plaintiff "has not shown that the same decision-maker[s] [were] involved" in the sanctioning phase of the Title IX proceedings. *Klocke v. Univ. of Texas at Arlington*, No. 4:17-CV-285-A, 2018 WL 2744972, at \*6 (N.D. Tex. June 7, 2018), *aff'd*, 938 F.3d 204 (5th Cir. 2019). While a lack of identical decisionmakers is not dispositive, it does cut against finding that U.F. is a proper comparator because "different decisionmakers often exercise their discretion differently." *Thomas v. Johnson*, No. 5:12-CV-106, 2014 WL 2155036, at \*10 n.14 (S.D. Tex. May 22, 2014), *aff'd* (June 2, 2015). In sum, Plaintiff has not identified a similarly

situated female student with any specificity, much less one that TAMU treated more favorably under nearly identical circumstances. Plaintiff's selective enforcement claim fails for lack of a comparator, the required third element of his *prima facie* burden.

In the alternative, the Court finds that even if Plaintiff had established a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for investigating and suspending Plaintiff, and Plaintiff has failed to present sufficient evidence from which a rational trier of fact could find that Defendant's reasons were pretext for sex discrimination. Defendant offers three reasons for its actions: 1) it investigated Plaintiff because H.S. submitted a complaint against him, and it is the University's normal practice to investigate such complaints, 2) a Student Life Conduct Panel "heard testimony and found H.S.'s account of the anal penetration more credible than Van Overdam's, and thus it concluded that the anal sex occurred without her clear consent," and 3) the panel "found that Van Overdam should be suspended for six months, in large part due to the gravity of his misconduct and the lack of sufficient mitigating circumstances." ECF No. 164 at 18-19.

The only evidence of pretext submitted by Plaintiff is a statistical analysis conducted by his expert, Tumulesh K.S. Solanky, Ph.D. ("Dr. Solanky"). Plaintiff argues that this evidence is sufficient to show the existence of a genuine issue of material fact:

> Dr. Solanky discovered several highly statistically significant disparities between men and women throughout the Title IX investigation and hearing process at Texas A&M. For example, of the students that were charged and found responsible for sexual misconduct, no females were suspended or expelled from Texas A&M while 55% of males were suspended or expelled.

ECF No. 166 at 15; *see also* ECF 166-3, Ex. C.

Dr. Solanky's analysis is insufficient to create a genuine issue of material fact as to whether Defendant's articulated reasons for investigating and disciplining Plaintiff were pretextual. In discrimination cases assessed under the *McDonnell Douglas* framework, the Fifth Circuit has

14

repeatedly expressed skepticism about the ability of statistics to rebut a defendant's nondiscriminatory reasons for taking a challenged action against a particular individual. *See, e.g.*, *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992) ("[P]roof of pretext, hence of discriminatory *intent*, by statistics *alone* would be a challenging endeavor."); *Baker v. Randstad N. Am., L.P.*, 151 F. App'x 314, 321 (5th Cir. 2005) (internal quotation marks omitted) ("[S]tatistical presentations that do not include analyses of the facts surrounding the circumstances of the individual employees at issue are impotent, without more, to rebut an employer's articulated, nondiscriminatory reason for terminating an employee.").

More importantly, however, Dr. Solanky's statistical analysis does not support the inferences of pretext that Plaintiff seeks to draw. For example, Plaintiff claims that the analysis shows that "of the students that were charged and found responsible for sexual misconduct, no females were suspended or expelled from Texas A&M while 55% of males were suspended or expelled." ECF No. 166 at 15. A closer look reveals a critical flaw in the analysis: In creating the umbrella category of "sexual misconduct," Dr. Solanky lumped together primary charges of sexual abuse, sexual contact, and sexual harassment. ECF No. 166-3, Ex. C at 18. As previously discussed, Plaintiff was suspended after being found responsible for sexual abuse—what TAMU generally considers "to be the most serious type of Title IX misconduct," thereby triggering "the most severe punishments (like suspension or expulsion)." ECF No. 168 at 9. Thus, punishment decisions in, say, sexual harassment cases do not help Plaintiff rebut Defendant's proffered reasons for *his* suspension—namely, that his panel members believed that sexual abuse in the form of anal penetration without clear consent justified significant discipline. Even Plaintiff's counsel acknowledged that the conduct complained of in <u>twenty</u> (20) out of the twenty-two (22) sexual harassment cases was not the same as or similar to the conduct in Plaintiff's case. ECF No. 168-1,

15

Exs. 16(A)-(B); ECF No. 168-1, Ex. 11 at 10:1–11:20 (in which Dr. Solanky stated that Plaintiff's counsel provided the information in the same/similar conduct column of the spreadsheet); *see also E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996) (rejecting statistical evidence in age discrimination case in which expert had no explanation for his "arbitrary" choice of age groups for review and did "not even purport to analyze the facts" concerning individual plaintiffs).

Additionally, Dr. Solanky's analysis does not indicate that female students found responsible for a primary charge of sexual abuse were suspended or expelled at significantly different rates than male students found responsible for the same primary charge. In fact, Dr. Solanky admitted that "he *could not* find a statistically significant disparity in punishments for male and female respondents in just 'sexual abuse' cases" because there were so few cases of sexual abuse with female respondents that it was improper to conduct a statistical analysis. ECF No. 168 at 9; *see also* ECF No. 168-1, Ex. 11 at 47:9–49:6. Disaggregating Dr. Solanky's "sexual misconduct" category reveals that male and female respondents were not similarly situated because the cases with male respondents generally involved more serious misconduct than those with female respondents. ECF No. 168 at 10. As Defendant notes, "Dr. Solanky erred when he did not eliminate the obvious nondiscriminatory explanation for his disparity finding: Male students were suspended/expelled at higher rates than female students because a greater percentage of the male cases involved acts of sexual abuse." *Id.*; *see also* ECF No. 168-1, Ex. 11 at 20:13–18.

Lastly, Dr. Solanky found no statistically significant gender disparities in punishment rates when he compared males and females charged with the same type of Title IX violations. *See* ECF 166-3, ¶¶ 10, 12, 34, 36 (no statistically significant disparity in dating violence cases); *id.* at ¶¶ 14, 16, 38, 40 (no statistically significant disparity in domestic violence cases); *id.* at ¶¶ 23, 25, 47, 49

16

(no statistically significant disparity in stalking cases).

Dr. Solanky's analysis, coupled with Plaintiff's lack of "particularized evidence directly challenging the defendant's announced rationale," is not probative of sex discrimination and fails to demonstrate a fact issue as to whether Defendant's reasons for Plaintiff's suspension actually motivated its decision. *Texas Instruments Inc.*, 100 F.3d at 1186.

For the foregoing reasons, the Court holds that Defendant is entitled to summary judgment with respect to Plaintiff's selective enforcement claim.

## IV. CONCLUSION

The Court's review of the summary judgment evidence indicates that Plaintiff's selective enforcement claim fails for lack of standing as a matter of law. In the alternative, the Court finds that Defendant is entitled to summary judgment because Plaintiff failed to demonstrate a genuine issue of material fact on the merits of his Title IX selective enforcement claim. In conclusion, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 164).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 10th day of January, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE